IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


TANIELLE SHURNEY,
     Plaintiff


    v.            CIVIL ACTION NO. 05-196 ERIE


SCOTT ENTERPRISES, INC.,
et al.,
     Defendants



HEARING ON DEFENDANT'S MOTION TO DISMISS



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Friday, September 2, 2005.



APPEARANCES:
     A.J. ADAMS, Esquire, appearing on behalf of
     the Plaintiff.

     CHRISTIAN D. BAREFORD, Esquire, Deputy Attorney
     General, appearing on behalf of Defendant Sean

Pierce.

GARY D. BAX, Esquire, appearing on behalf of
Defendant Scott's Splash Lagoon, Inc.

GERALD J. HUTTON, Esquire, appearing on behalf
of Defendant Scott's Econo Inn, Inc.

Ronald J. Bench, RMR - Official Court Reporter

2

1              P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 9:55 a.m., on

4   Friday, September 2, 2005, in Courtroom C.)

5

6          THE COURT:  We have for consideration today the

7   motion to dismiss filed on behalf of defendant Pierce.  Who

8   else do we here today, just for the record, over at counsel

9   table?

10          MR. HUTTON:  Gerry Hutton, I have Scott's Econo Inn,

11   Inc.  I think there's a misidentification in the caption.

12          THE COURT:  All right.

13          MR. BAX:  Your Honor, I'm Gary Bax and I represent

14  Scott's Spash Lagoon, Inc., which was incorrectly identified as

15  Scott Enterprises, Inc.

16         THE COURT:  All right.  Well, we'll talk about how

17  to straighten that out in a little bit.  For present purposes,

18  we have Mr. Bareford here, who has filed a motion and has the

19  floor.  Do you want to come up to the podium.

20         MR. BAREFORD:  Thank you, judge.  Good morning,

21  judge.  Just quite simply stated, sir, this is a case of a lady

22  who checked into a hotel under a reserved credit card that was

23  reportedly stolen.  When the hotel had seen that she checked

24  in, they notified the police.  The police came and effectuated

25  an arrest.  It was a bona fide complaint by the victim of the


                                    3


1   offense, a warrantless arrest was justified under the

2   Pennsylvania statute because this was a crime involving theft.

3          THE COURT:  This, obviously, is all outside the four

4   corners of the pleading, but tell me outside the record that I

5   have, what you believe happened.  So she goes and checks in and

6   then what happened, who had complained?

7          MR. BAREFORD:  It was just, according to the

8    complaint, it was someone who works there within the hotel.

9        THE COURT:  All right.

10        MR. BAREFORD:  So Trooper Pierce responded, like I

11    said, sir, he had a complaint from the people.  He had the

12    person, he even had the documentation that were provided to him

13    of her attempt to actually gain entry into the room that was

14    reserved under the stolen credit card number.  And at that

15    point he effectuated his arrest.

16        THE COURT:  Now, in the complaint which, as you

17    know, I'll hear more from plaintiff's counsel presently on it,

18    but it purports to plead a malicious prosecution, false arrest

19    claim, essentially, as I read it anyway.  But it says in the

20    introductory paragraph, in essence, that the arrest was

21    effectuated without probable cause.  Since I have to, at least

22    at the pleading stage, accept all well-pled allegations as true

23    and draw all reasonable inferences, why am I on a 12(b) trying

24    to scrape beneath that; why shouldn't this come on on a Rule 56

25    to be cleaner and surer?

4

1        MR. BAREFORD:  A Rule 56 may be appropriate as well,

2   sir.  However, notwithstanding that which is contained in the

3   first paragraph, that's ultimately just a legal conclusion.

4   However, if you look at the documents that are also attached to

5   the complaint, that also demonstrates sufficient facts.  You

6   can't conveniently ignore the facts that are contained within

7   those documents of his own complaint and to suggest as if there

8   is not probable cause.

9        THE COURT:  Let me just ask you this, and then

10  because there isn't really much more to say on it, I understand

11  your position.  But it's true, isn't it, that the lynch pin of

12  your argument, both with respect to the false arrest claim and

13  the malicious prosecution claim, to the extent that -- to make

14  out a viable claim for either, you must demonstrate a lack of

15  probable cause that your motion is premised upon a demonstrable

16  presence of the probable cause?

17       MR. BAREFORD:  That's correct, sir.

18       THE COURT:  All right, let me hear from plaintiff's

19  counsel.

20       MR. ADAMS:  Judge, since counsel for both the

21  defendants are here, I wonder if I could take perhaps about

22  five minutes of the court's time and basically give you an

23  overview of how we got here today?

24        THE COURT:  Well, you can.  But only to the extent

25   that that overview will inform me on how I should dispose of


                                5


1   this motion to dismiss.

2        MR. ADAMS:  Well, specifically for those purposes,

3   the factual background of the case is reflected in the

4   complaint as the following.  Tanielle Shurney and her son and

5   her nephew, together with her cousin, Tracy Smith, and her

6   daughter, about two weeks before this incident, had planned a

7   trip to Splash Lagoon.  There was a special going on where you

8   got a room, I believe it was $89, you got several free passes

9   to Splash Lagoon.

10        THE COURT:  Hang on one second.  Mr. Agresti is back

11   there, how are you -- are you here on behalf of someone or are

12   you just monitoring?

13        MR. AGRESTI:  I represent the Scotts personally, I'm

14   just observing.

15        THE COURT:  If you had entered an appearance, I was

16   going to tell you that we do have extra chairs that you could

17   pull up.  But you're welcome to sit back there.

18          MR. AGRESTI:  Thank you, judge.

19          THE COURT:  All right, go ahead.

20          MR. ADAMS:  Again, approximately two weeks, 10 days

21  or two weeks before this scheduled 4th of July weekend

22  vacation.  My client is a data entry worker, or she was, she

23  lost her job at Chase Manhattan Bank.  She had a debit card,

24  but she did not have a credit card.  Because her cousin, the

25  cousin's daughter was going to go, she agreed to make the

6

1  reservations at Splash Lagoon.  And she said she would make the

2  reservations in Tanielle's name because of the fact that

3  Tanielle was going to be the adult supervising, not only

4  Tracy's daughter, but also her nephew and the plaintiff's son.

5          THE COURT:  All right.

6          MR. ADAMS:  So then Ms. Shurney appears at the

7  hotel.  She is then asked to give her driver's license, which

8  she does.  They Xerox the driver's license.  She signs the

9  registration form in her name.  And they say the room is going

10  to take approximately five minutes, so you can go back out to

11  the parking lot.  By the time she gets out to the parking lot

12   to get the suitcase and the children organized, two state

13   police cars pull up to the scene, one of which included

14   defendant Pierce. At that time defendant Pierce asked my

15   client for identification. She showed them the driver's

16   license. He indicated that you're under arrest for false use

17   of a credit card. She said I did not falsely use the credit

18   card, I'm going to pay in cash. And, in fact, allowed Trooper

19   Pierce to inspect the contents of her purse, which included no

20   credit cards and $250. At that point in time she was arrested

21   in the parking lot in front of her children, taken out to the

22   holding area until District Justice Abate could hold court.

23   She explained the same thing to District Justice Abate as I've

24   briefly indicated --

25        THE COURT: Let me interrupt you for a second. Are


                              7


1   you saying that her relative who called in -- the room was

2   reserved with the use of a credit card, is that right?

3        MR. ADAMS: We don't even know at this point. That

4   is definitely a contested fact. I can explain it in the

5   following way. As soon as Ms. Shurney's charges were dismissed

file:///A|/SHURNEY1.TXT

6    and I represented her, obviously, in the criminal case, she

7    immediately went back to her cousin's in Cleveland and

8    basically said what the heck is going on here.  And I spoke

9    again to Ms. Shurney last night and again she indicated the

10   fact that Tracy Smith, her cousin, has indicated she did not

11   use a stolen credit card to make that reservation flat out.

12        THE COURT:  Well, be that as it may, let's return to

13   the four corners of the complaint here.  Did you attach an

14   affidavit of probable cause?

15        MR. ADAMS:  Yes, in fact, the criminal complaint

16   that Trooper Pierce had issued was made part of the criminal

17   complaint, of the plaintiff's complaint, excuse me.

18        THE COURT:  Well, I mean it says the accused, to

19   state the obvious what's here, under affidavit of probable

20   cause, "the accused did try to use a stolen credit card,

21   Mastercard account number," etc., "to gain accommodations at

22   the Econo Lodge located at," etc.  "The accused then went to

23   the Econo Lodge on 7/3/04, and signed for the room under the

24   name Shurney, Tanielle, attempting to pay for the room by using

25   a credit card that did not belong to her."  Well, put aside the

1    question of ownership and stolen and whatever, a credit card --

2    did she physically have the credit card in her hand?

3         MR. ADAMS:  No.

4         THE COURT:  How did Scott's end up with the credit

5    card number, I mean, did somebody call it in?

6         MR. ADAMS:  Judge, I have no idea.  I mean, there's

7    an indication that some woman named Tonya Traylor had indicated

8    that her credit card was stolen, and that's all we know.  And,

9    again, I think we all have to remember the fact that not all of

10   us have credit cards to reserve hotel rooms.  And especially

11   among poor people and it's necessary, obviously, to have a

12   credit card for that purpose.  So the fact that she relied upon

13   her cousin to do that certainly doesn't seem unreasonable under

14   the circumstances.

15        THE COURT:  Now, I apologize, the problem is mine

16   rather than yours I'm sure.  But tell me again, although, it's

17   outside the four corners of the complaint, what she relied upon

18   her cousin to do?

19        MR. ADAMS:  Just to reserve the space at the Econo

20   Lodge so that she could take the kids there for an overnight

21  and a stay at the Splash Lagoon.

22       THE COURT:  And, presumably, her cousin did that and

23  used the credit card, otherwise --

24       MR. ADAMS:  I think we can presume that there was

25  some sort of paper difficulty at the hotel, I don't have -- I

9

1  don't have any explanation, and Tracy Smith, who was the

2  cousin, who made the reservation, has vehemently denied the

3  fact that she used a stolen credit card to reserve the room.

4       THE COURT:  Now, let's go back.  The fact of the

5  matter is it appears that for some reason this stolen credit

6  card and account number shows up at Scott's, either via --

7  well, they're not pulling it out of whole cloth?

8       MR. ADAMS:  I can tell you Trooper Pierce pulled it

9  out of whole cloth in the affidavit of probable cause.  He

10  indicated that at the preliminary hearing.  He agreed there was

11  no physical possession of any stolen credit card, despite the

12  fact that he had heard that and referred to that in the

13  complaint.

14       THE COURT:  Let me ask you another question.  You

15    don't plead a Fourteenth Amendment claim in here.  You

16    suggested in your brief, when all is said and done, you tiptoe

17    right up to a selective enforcement case.  But you don't plead

18    it, you plead a Fourth Amendment claim.  What are you trying to

19    plead here; I got to tell you, in all respect, this is not a

20    very clear complaint?

21        MR. ADAMS:  And I did not want to raise the specter

22    of total racial discrimination claim at this point.

23        THE COURT:  You can't dip your toe half way in it,

24    it's either there or it's not?

25        MR. ADAMS:  Can I explain why I raised the

10

1    allegation, judge?

2        THE COURT:  Yes.

3        MR. ADAMS:  After I found out that Ms. Shurney was

4    subject, and again right now on the record I'm telling you we

5    believe after a year she's a totally innocent person.  So the

6    court understands that.  If something happens in the future,

7    you can remind me of this conversation.  But after I found out

8    what happened to Ms. Shurney --

9          THE COURT:  My court reporter will, I don't have to

10   remind you.  Go ahead.

11          MR. ADAMS:  When I found out what happened to Ms.

12   Shurney, I went back to the district justice, because District

13   Justice Dwyer told the representatives from Scott's, this is

14   not a good situation, this woman spent a week in jail, I'm

15   dismissing the charge.  Trooper Pierce was almost apologetic.

16   I kiddingly asked him if he had ever been sued before, he said

17   yes.  It was one of those situations where I said wait a

18   minute, is there other individuals of a similar nature that in

19   fact were victimized as a result of what might be a policy.

20   So what happened was the district justice said yes, there was

21   another black woman from Cleveland, and her name is Estelle

22   Martin and here's a copy of the complaint that was filed,

23   here's a copy of my disposition where I discharged that

24   particular situation.  I contacted Ms. Martin in Cleveland, and

25   basically to see if she would serve as a witness with regard to


11


1   this situation.  She indicated she didn't want to return to

2   Erie in any way, shape or form.  That, obviously, she was a

3    black female from Cleveland as well.  I then asked the district

4    justice if in fact there were any other individuals, other than

5    those two that he knew of.  He said those are the only two.  So

6    I'm faced with a situation where two black women from Cleveland

7    end up getting subject to warrantless felony arrests and go to

8    jail.  And I know, from my own experience, because a great

9    majority of both my business and personal travel is booked by

10   me secretary, and then in fact if I was in the same exact

11   situation in the parking lot of the hotel, there is no way

12   Trooper Pierce is going to arrest me.

13          THE COURT:  I appreciate the background, but is that

14   a long hand way of saying you're not pursuing a selective

15   enforcement claim?

16          MR. ADAMS:  What I'm saying is that there appears to

17   be a policy at the hotel that selected two people to get

18   arrested subject to warrantless felonies for purported use of a

19   stolen credit card and both of those people were black females.

20   If a jury concludes, I guess I would say no, I'm not waiving

21   that, that if a jury concludes that --

22          THE COURT:  If you haven't plead it, you're not

23   going to get it to a jury.  We're going to talk about that in a

24   second.  Finally, let me ask you this.  And maybe because it's

25  too early in the morning, although, it's 10 after ten, I'm

12

1  usually rolling by now.  It says "Defendant Scott Enterprises

2  has a policy of pursuing the warrantless arrest of individuals

3  who register at their hotels when the reservation was secured

4  via telephone utilizing purportedly stolen credit card

5  information."  That's in your pleading, that's what you're

6  saying happened here; you're saying somebody called in the

7  credit card number to reserve a room?

8        MR. ADAMS:  Well, the only way --

9        THE COURT:  Aren't you?

10        MR. ADAMS:  Well, I did say that in the complaint

11  and yes, that is an inference that can be made.

12        THE COURT:  It's not an inference, I don't have to

13  infer anything from a factual averment, that's what it says.

14        MR. ADAMS:  Well, I have to admit that --

15        THE COURT:  Do you want to retract it?

16        MR. ADAMS:  No, your Honor.  On one hand I want to

17  indicate that the criminal complaint that was filed by Trooper

18  Pierce was in fact false in many ways.  But I had to presume

19  that Trooper Pierce got there for a particular reason and I

20  incorporated the language from his criminal complaint to aver

21  the fact that I guess he was there because there was an

22  allegation of a stolen credit card.  And that's why I reference

23  the affidavit of probable cause and attached the criminal

24  complaint as an exhibit.

25          THE COURT:  Let me ask you finally a hypothetical

13

1  question.  If you went and checked into the Avalon and when you

2  got there -- and you had said your secretary makes arrangements

3  for you, is that right.  If she had been out at a party the

4  night before and her friend and her had inadvertently mixed up,

5  she picked up her friend's credit card and vice-versa.  Her

6  friend reports her credit card stolen, not knowing how it came

7  about, but your secretary nevertheless has it and it's a

8  Mastercard, just like hers, but it's not hers.  She innocently

9  then calls the Avalon and makes the reservation using her

10  friend's card.  You show up and say my room has been

11  reserved -- how, by Mastercard.  They check the thing and they

12  see it's stolen.  And there's a gendarme standing right next to

13  you and they say, they explain what happened, the guy arrests

14  you.  Is there a probable cause for that arrest?

15          MR. ADAMS:  Certainly not.  And one of the things I

16  hope I can introduce today is a summary of today's oral

17  argument, which I anticipated.  There is an absolute duty for

18  the state police to fully investigate a situation before they

19  swear an oath to get an arrest warrant.  The mere fact that I

20  stood there certainly would not be probable cause because of

21  the very explanations you're providing.  If in fact that was my

22  secretary switching credit cards, that is not probable cause to

23  arrest me.  There is in fact a duty, and specifically what I

24  submit in my summary of oral argument, the case law indicates

25  the fact that before the state levels a charge against an


                                    14


1  individual, the state police have to conduct the appropriate

2  investigation to determine whether probable cause exists.

3          THE COURT:  Just as an aside, this is neither here

4  nor there, but did they ever find out whose stolen credit card

5  it was?

6          MR. ADAMS:  Judge, because we're at this early stage

7   of the proceedings, then, obviously, that's not the situation.

8   It's not for lack of trying on my part, if I could.  I started

9   sending letters to the Commonwealth starting September the 1st

10  of '04, to the Department of General Services, Bureau of Risk

11  and Insurance Pre-litigation Division.  They then forwarded

12  this to the Pittsburgh Attorney General's Office.  They

13  contacted me and said no, this is a state police matter.  So I

14  contact the counsel for the state police and also faxed them a

15  copy of this letter.  And the state police counsel wouldn't

16  respond.

17          And the reason why it was necessary for me to file a

18  complaint at this juncture was that, although I don't agree

19  with the argument, there is a minority opinion that says that

20  false arrest cases have to be prosecuted within one year of the

21  incident.  And I filed this complaint seven days before the

22  one-year statute of limitations would have expired.  Now,

23  again, I think that with the unification of the judicial code,

24  I don't believe a one-year statute of limitation applies.  But

25  I have already in my career lost a civil rights case on a

15

1   one-year statute of limitations issue, I'm certainly not going

2   to repeat that.

3         THE COURT:  We're not there yet, but just by way of

4   a reminder, a malicious prosecution claim under 1983 has a

5   two-year statute of limitations?

6         MR. ADAMS:  That's correct.  But a false arrest

7   aspect of a state claim, there is an argument that's one year,

8   that's why I wanted to file, I believe it would have been

9   malpractice for me to allow that one year to pass mindful of

10   that fact there is that opinion.

11         THE COURT:  All right, thank you.  Anybody have

12   anything else they want to say over here?

13         MR. ADAMS:  I would just like to submit, just so you

14   know I took the certification course and, unfortunately,

15   there's an issue because I can't be two persons.  And they're

16   trying to work out how that's going to happen, I can't be a

17   public defender and a private counsel under the new system

18   because they can give me one account number.  So I did draft a

19   summary of argument that I would like to make part of the

20   record, I have copies for counsel.

21         THE COURT:  What is a summary of argument?

22          MR. ADAMS:  Just the fact that I know I couldn't

23   respond twice to the 12(b)(6) motion, so I thought what I would

24   do is anticipate the court's questions and draft a summary of

25   my oral argument for today and then make that part of the


16


1   record.

2          THE COURT:  Can I see it?

3          MR. ADAMS:  Yes.

4          THE COURT:  You can go ahead and file this.  You can

5   file it but you got to file it electronically.  For the record,

6   you already filed a response, I believe, to the motion to

7   dismiss.  I'm just going to treat this pleading, it's called

8   plaintiff's summary of oral argument, I'm going to treat that

9   as a supplement to your response.  Because just for one, I

10   don't know how you could summarize your oral argument before

11   you had been there.  It will be part of the record and you can

12   go ahead and file it.

13          MR. ADAMS:  Thank you, very much.

14          THE COURT:  Mr. Hutton.

15          MR. HUTTON:  Your Honor, I'm Gerry Hutton, I have

16  Scott's Econo Inn, Inc., in this case.  I won't be long.  I

17  just wanted to point out there was a question that the court

18  raised as to if the credit card's rightful owner had ever been

19  identified.  She is actually identified in the attachment to

20  the complaint.  The police criminal complaint, which is one of

21  the attachments, to paragraph two, identifies a violation of

22  Section 4106(a) of the Crimes Code, access device fraud.  It

23  says person named, Tonya Traylor of 10039 Delores, Streetsboro,

24  Ohio.  That was the card that the trooper had.  The court noted

25  its concern early on as to whether this should be dismissed on


17


1  a 12(b) or whether it would be appropriate to have a Rule 56.

2  I wrestled with that same question.  And as you heard, there

3  was some differences in the factual statement here.  I don't

4  want to do anything to impede Trooper Pierce's dismissal of

5  this case, but I think we allege in our answer that we filed

6  what transpired here.  That what happened was the plaintiff

7  made a reservation at Splash Lagoon, the credit card of Tonya

8  Traylor was used.  The following day Splash Lagoon receives a

9  call from Tonya Traylor inquiring as to why her card had been

10  charged, and notifying Splash Lagoon that she had filed a

11  complaint with the Streetsboro, Ohio, Police Department

12  regarding the false use of her credit card.  The Streetsboro

13  Police Department then contacted the state police, who alerted

14  Econo Lodge.  So in a sense where the police is arguing we

15  alerted them, it's actually somewhat of the reverse.  That

16  prior to our owner's complaint, we became involved through the

17  police department.  It was the police department who

18  effectuated the arrest based on a complaint of a party.  I

19  think for the case to be dismissed, I don't want to impair the

20  12(b) motion, but as the court noted --

21      THE COURT:  You would have filed a 12(b) motion if

22  you thought a 12(b) motion would have worked?

23      MR. HUTTON:  Yes, your Honor.  The court doesn't try

24  cases on affidavit generally.  That's why we have trials and we

25  have depositions.  That's why we filed the answer.


18


1      THE COURT:  I'm not going to dismiss it on a 12(b)

2  anyways, I have reached that conclusion.  Let me get an order

3  on the record here.

4    ORDER

5        Presently pending before the court is a motion to

6    dismiss filed on behalf of defendant Pierce.  In the interest

7    of time, I simply incorporate by reference as it fully set

8    forth the allegations in the plaintiff's complaint.  Suffice it

9    to say, the plaintiff alleges that she was arrested without

10    probable cause when she registered at Scott's Motel, and was

11    accused of using an allegedly stolen credit card in conjunction

12    with her registration.

13        Defendant argues that the plaintiff has failed to

14    adequately allege either a false arrest or a malicious

15    prosecution claim.  The elements of a malicious prosecution

16    claim are:  (1) the defendant initiated a criminal proceeding;

17    (2) the proceeding ended in plaintiff's favor; (3) the

18    proceeding was initiated without probable cause; and (4) the

19    defendant acted maliciously or for a purpose other than

20    bringing the defendant to justice.  Morales_v._Busbee, 972

21    F.Supp. 254 (D.N.J. 1977).  As stated in Morales:

22        "The Supreme Court has recently explained the

23    distinction between a malicious prosecution and false arrest

24    claim and in noting where confinement has 'been imposed

25  pursuant to legal process, damages may be sought on the theory

19

1  of malicious prosecution, but not under a claim of false arrest

2  or imprisonment.  If there is a false arrest claim damages for

3  that claim cover the time of detention up until the issuance of

4  process for arraignment, but not more'."

5         Accepting as true all the well-pled allegations in

6  the complaint, I find that the plaintiff has pled a viable

7  cause of action both with respect to the malicious prosecution

8  of the Fourth Amendment claim.  Insofar as the false arrest

9  claim is concerned, of course, under the previously-described

10  case law, any damages for that particular constitutional tort

11  would cease at the time that the arrest warrant was issued.

12         Let me make clear that in denying the motion to

13  dismiss at this stage, I am simply doing so on the basis of

14  compliance with the requisite standard which of course is I

15  must accept as true all well-pled allegations and draw all

16  reasonable inferences in favor of the non-movant.  In denying

17  the motion to dismiss, it is without prejudice to the defendant

18  or defendants to file a renewed motion under Rule 56 on a more

19  developed record.

20       All right, let's go off the record for a second.

21       (Discussion held off the record.)

22       THE COURT:  Let's go on the record here.  Let's

23  revisit the question of the misnaming of the defendants.

24  Tell me about that?

25       MR. BAX:  Your Honor, I represent a Pennsylvania

20

1  corporation called Scott's Splash Lagoon, Inc.  That corporate

2  entity is not named in the complaint.  There is a

3  misidentification, there is Scott Enterprises, Inc., d/b/a

4  Econo Lodge/Splash Lagoon.  It's my understanding that they're

5  separate Scott Corporations.  One is the Econo Lodge

6  Corporation, the other is my client.

7       THE COURT:  Scott Enterprises is the overarching

8  corporate entity?

9       MR. HUTTON:  I don't believe there is a Scott

10  Enterprises, Inc., your Honor.  There might be some other

11  entity or individual who has a principal interest in the

12  Pennsylvania corporation.  Of which Scott's Econo Inn is one, I

13   think Scott's Splash Lagoon, Inc., may be another.  Scott

14   Enterprises -- that is one of the difficulties we had in

15   answering the complaint, trying to ascertain who was the

16   appropriate party.

17          THE COURT:  Off the record.

18          (Discussion held off the record.)

19          THE COURT:  Let's go back on the record.  Is Econo

20   Lodge, Econo Lodge, Inc., is that a legitimate corporate

21   entity?

22          MR. HUTTON:  Yes, your Honor.

23          THE COURT:  So what you're saying is Econo Lodge,

24   Inc., stands on its own two feet as a separate entity, not as a

25   d/b/a, is that right?


21


1          MR. HUTTON:  That's correct, your Honor.

2          THE COURT:  And then Scott Enterprises, Inc., you

3   say that is misnamed as well, is that right?

4          MR. HUTTON:  There is no such corporation existing,

5   your Honor.

6          THE COURT:  Well, let me swing over here.  As a

7   practical matter, I'm talking in terms of potential recovery if

8   it ever came to that in this case.  If Econo Lodge, Inc., is an

9   independent corporate entity answerable as any other fictitious

10  person would be for it acts and if it's insured -- let me ask

11  plaintiff's counsel, why is Scott Enterprises, which apparently

12  isn't even an entity, in the case?

13        MR. ADAMS:  Judge, when I started having contact

14  with Peerless Insurance Company, they responded back with our

15  insured, Scott Enterprises/Econo Lodge.  Then when Mr. Agresti,

16  who originally accepted service on their behalf, also indicated

17  that it was Scott Enterprises.  I sent certified mail to Scott

18  Enterprises at the address listed in the telephone directory,

19  again, for purposes of trying to settle this matter

20  pre-litigation.  That is why, based upon those insurance

21  representations and what they've listed in the telephone book,

22  that's what I indicated.  And their responses have been

23  consistent with that.

24        MR. HUTTON:  A check with the Pennsylvania

25  Corporation Bureau will verify our responses.  There is no such

22

1    entity, your Honor.  It was a mistake by an adjuster.

2        THE COURT:  Let me invite Mr. Agresti to earn his

3    paycheck here today and give us some information on this?

4        MR. AGRESTI:  Judge, Scott's Enterprises is a d/b/a,

5    it is not incorporated.  As Attorney Hutton indicated, a search

6    of the DOS Web site would indicate that.  Each is a separate

7    property that the Scott family owns.

8        THE COURT:  Is separately incorporated?

9        MR. AGRESTI:  Correct.

10        THE COURT:  All right.  In addition -- well, what

11    I'm going to direct that you do within five days is to amend

12    the caption of this case.  So what you're telling me is the

13    appropriate defendant here is Econo Lodge, Inc., is that

14    correct -- not that the defendant is liable, but as a nominal

15    matter, the appropriate defendant is Econo Lodge, Inc., is that

16    right, Mr. Hutton?

17        MR. HUTTON:  That is the appropriate designation.

18    The reservations are handled in a joint manner with Scott's

19    Splash Lagoon, Inc.

20        THE COURT:  All I'm trying to do here, this should

21    not be that difficult, is figure out, as in any lawsuit, what

22    the appropriate name of the defendant or defendants are.

23          MR. HUTTON:  I think we stated that in our answer.

24          THE COURT:  You do?

25          MR. HUTTON:  I believe so, your Honor.


                              23


1          THE COURT:  All right.

2          MR. BAX:  Your Honor, if I could, both Econo Lodge

3    and Splash Lagoon have filed answers.  Again, my client is

4    Scott's Splash Lagoon, Inc.

5          MR. ADAMS:  Judge, that would be five working days,

6    since we have the Labor Day weekend?

7          THE COURT:  Well, I'm just trying to figure out what

8    it is.  In other words, I don't have your answers for some

9    reason.  In each of your answers do you designate how you

10     should properly be referred to?

11          MR. HUTTON:  Several times, yes.

12          MR. BAX:  Yes.

13          MR. HUTTON:  I think paragraph three.

14          THE COURT:  Well, then --

15          MR. ADAMS:  Judge, I did get the answer yesterday.

16          THE COURT:  Just amend the caption, all you got to

17  do is amend the caption and incorporate by reference all your

18  other allegations, so you don't have to reinvent the wheel.

19  And get that in within 10 days.  But, in the meantime, just to

20  keep things moving along, I would suggest that -- who needs to

21  file an answer here?

22          MR. BAREFORD:  Trooper Pierce does.

23          THE COURT:  Get an answer in in 20 days.  And then

24  once we get the pleadings all closed, we will set up a status

25  conference, all right.


24


1          MR. BAX:  Your Honor, may I ask one other matter.

2  I didn't quite understand what Mr. Adams was saying about the

3  non-electronic filing problem that he has?

4          MR. ADAMS:  Yes, what happened was when I took the

5  class, I asked the instructor how I can handle a situation

6  where on a rare occurrence where I would be coming to federal

7  court as a public defender for the Erie County Public

8  Defender's Office.  And what would I do in situations like this

9  one where I have a private matter from my home office.  They

10  indicated we don't know.  At this point in time we can give you

11  a password, but in order to get an account, you can only be one

12  person.  It wouldn't be fair for me to bill the County of Erie

13  for any of the proceedings here on this matter.

14        THE COURT:  That would be right.

15        MR. ADAMS:  And the reverse would also be true, if

16  as a public defender and I'm first assistant, if I would be

17  coming here as a public defender, then it would be unfair that

18  I would have to pay for what would in fact be --

19        THE COURT:  That's ridiculous, if you're functioning

20  here for -- first of all, I can't imagine, I can't think of any

21  circumstances under which as a county public defender you would

22  be here in federal court doing anything, can you?

23        MR. ADAMS:  Yes, there have been a few occasions

24  where we filed, your Honor.

25        THE COURT:  Maybe so.  But, in any event, in the


                              25


1  rare event that that happens, I am confident the county is not

2  going to stick you with a bill for doing work for the county.

3        (Discussion held off the record.)

4          THE COURT:  All right, we're adjourned.

5

6          (Whereupon, at 10:32 a.m., the proceedings were

7    concluded.)

8

9                    - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1                    C E R T I F I C A T E
                     _ _ _ _ _ _ _ _ _ _

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11   _____

12   Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25