IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TANIELLE SHURNEY,
    Plaintiff

  v.          CIVIL ACTION NO. 05-196 ERIE

SCOTT ENTERPRISES, INC.,
et al.,
    Defendants

STATUS CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Monday, November 21, 2005.

APPEARANCES:
    A.J. ADAMS, Esquire, appearing on behalf of
    the Plaintiff.

    CHRISTIAN D. BAREFORD, Esquire, Deputy Attorney
    General, appearing on behalf of Defendant Sean
    Pierce.

  GARY D. BAX, Esquire, appearing on behalf of Defendant Scott's Splash Lagoon, Inc.

  GERALD J. HUTTON, Esquire, appearing on behalf of Defendant Scott's Econo Inn, Inc.

  Ronald J. Bench, RMR - Official Court Reporter

2

1   P R O C E E D I N G S

2

3  (Whereupon, the proceedings began at 9:10 a.m., on

4 Monday, November 21, 2005, in Judge's Chambers.)

5

6  THE COURT:  All right.  We're here on a status

7 conference at 05-196.  It looks like you folks have agreed on a

8 proposed discovery schedule.  Off the record.

9  (Discussion held off the record.)

10  THE COURT:  Let me cut right to the chase here.

11 Your discovery is going to run through March 3rd.  Plaintiff's

12 narrative is going to be due on March 20th.  Any motions, any

13 dispositive motions would be due also on March 20th.

14  Defendants' narratives would be due on April the 10th.  And a

15  response to any motion for summary judgment would be due on

16  April the 10th.  Off the record.

17          (Discussion held off the record.)

18          THE COURT:  Refreshing my recollection, and then

19  I'll let you folks get back to your offices.  This is a case

20  where there was a registration with a stolen credit card?

21          MR. ADAMS:  We don't know if this was a stolen

22  credit card.  The reservations were made by a third party.

23          THE COURT:  On her behalf?

24          MR. ADAMS:  On her behalf and other minors.  She

25  showed up and gave her real name and address, her driver's

3

1  license.  They said it was a stolen credit card.  She denied

2  it.  She obviously came through the public defender's system.

3  She said the same thing to my investigator.  We did have a

4  hearing, a preliminary hearing, the charges were dismissed.

5  Didn't have anything to do with the scheduling of the

6  reservation, and so Judge Dwyer threw it out.

7          THE COURT:  To this day do we know?

8           MR. BAX: We know, your Honor. I think we're going

9   to be able to establish that a woman identified herself as

10  Tanielle Shurney. She called up Scott's reservation center and

11  placed a reservation for Econo Lodge and Scott's Splash Lagoon.

12  When she was asked for a credit card --

13          THE COURT: Telephonically?

14          MR. BAX: Yes. So a woman who has identified

15  herself as Tanielle Shurney calls Scott's Splash Lagoon. When

16  she is asked for a credit card, she says wait a minute, I'll

17  put my sister on the line. Her sister then gives a credit card

18  number. And then Tanielle gets back on the line and says when

19  I get there, I don't want anybody charging anything on that

20  credit card. And then Tanielle Shurney --

21          THE COURT: Who says that I don't want anybody

22  charging anything?

23          MR. BAX: Tanielle Shurney.

24          THE COURT: Is it just to hold the room?

25          MR. BAX: No, it does not hold the room, it

4

1   purchases the room.

2        MR. HUTTON:  It was for $198.79.

3        MR. BAX:  After that Scott's Splash Lagoon gets a

4  call from a lady in Ohio who says what's this charge on my

5  credit card.

6        THE COURT:  When is this?

7        MR. BAX:  About a week later they get a call, what

8  is this charge on my credit card, I see it on my computer.

9        MR. HUTTON:  The reservation is made on June 25th,

10  your Honor.

11        MR. BAX:  And then the next thing what happens is

12  Scott's Splash Lagoon gets a call from an Ohio police

13  department, from an Ohio police officer, who says we're

14  investigating a stolen credit card, use of a credit card

15  without authorization.  In what jurisdiction are you.

16  Pennsylvania State Police.  Okay.  The officer calls back and

17  says when Tanielle Shurney shows up, call this number.  And

18  Scott's Splash Lagoon people called the number.

19        THE COURT:  There isn't much of a delay between

20  booking the reservation and her actually showing up.

21        MR. BAX:  So the Scott's people follow the direction

22  of the police, call the state police and she's arrested.

23  Apparently, she also has money in her pocket.  Apparently --

24   I'll just leave it at that.  That's the gist of it.

25            THE COURT:  Are any of those facts, alleged facts,

                                5

1   as laid out there, do you dispute that or is that pretty much

2   what you understand happened as well?

3            MR. ADAMS:  The general understanding from the

4   plaintiff's standpoint is that Ms. Shurney asked -- Tracy

5   Smith, who is the woman we referred to, to make a reservation.

6   She was to go with Tracy Smith's children and Ms. Shurney's

7   children to Splash Lagoon.  That, in fact, Ms. Shurney was

8   working at the time the reservations were made by Tracy Smith.

9   It was my client's intention to pay for the room.  She --

10           THE COURT:  Just to roll the tape back -- was your

11  client, you say she was actually on the telephone talking to

12  these folks?

13           MR. BAX:  The woman identified herself as Tanielle

14  Shurney.

15           THE COURT:  Did your client make the call?

16           MR. ADAMS:  No.  Obviously, we have some disputed

17  facts with the jury.  Those calls were made by Tracy Smith.  In

18   our initial disclosures we provided that information.

19          THE COURT:  I'm farther down the road than I need to

20   get here, just so I'm clear.  Assuming only for the sake of

21   discussion, and there may be other material issues of fact in

22   dispute floating around out there that I'm not aware of, maybe

23   you folks are, be that as it may.  If demonstrably it was a

24   stolen credit card, just for purposes of our discussion, and if

25   indisputably she checked in, meaning your client, utilizing a

6

1   stolen credit card, why for heaven's sake wouldn't that be

2   cause to arrest her?

3          MR. ADAMS:  She did not utilize a credit card, that

4   is the most important factor, she did not make the reservation.

5   She provided all the information, gave them her driver's

6   license with all the information.  Signed her real name.  And

7   explained as soon as Trooper Pierce pulled into --

8          THE COURT:  What did she say?

9          MR. ADAMS:  She did not make the reservation, I did

10   not use a stolen credit card.

11          THE COURT:  This isn't serendipity from heaven,

12  somebody had to pay for her room?

13          MR. ADAMS: That's another disputed point here. For

14  purposes of reservation holding, you need to have a credit

15  card, that's her understanding. Now, it's the defendants'

16  understanding that for some reason that's not the case. That

17  will be --

18          MR. BAX: There is no dispute about that, your

19  Honor. The credit card to charge the room is paid for at that

20  time. Now, that might not be your client's understanding, but

21  as a point of fact --

22          MR. ADAMS: That's a most unusual policy.

23          THE COURT: I'm not so interested about the

24  policies, as to trying to streamline the facts here as you

25  folks go forward on discovery as to what really is or is not in

                                    7

1  dispute. My question is, once again -- let me just walk it

2  through this way. This is just your understanding of what your

3  client may or may not say at deposition or otherwise may be

4  something else. But your client decides to take what, a couple

5  kids with her?

6        MR. ADAMS: Her children and also the children of

7   Ms. Tracy Smith. Who made the reservation.

8        THE COURT: Tracy Smith, it's your understanding,

9   was the individual who physically made the reservation by

10  making the phone call, is that it?

11       MR. ADAMS: Yes.

12       THE COURT: And is it your understanding and was

13  your client present when that was done?

14       MR. ADAMS: The first time I'm getting that

15  information was through the disclosures provided by the

16  defendant. That is a fact in dispute. My understanding is,

17  although, there were two phone calls, was my client was at work

18  at least for one of the reservations, I believe she worked as

19  an intake worker at Chase Manhattan.

20       THE COURT: In any event, whether she was there or

21  not, did your client understand that Ms. Smith would be making

22  a reservation on her behalf?

23       MR. ADAMS: Yes.

24       THE COURT: Would Ms. Smith be traveling with her as

25  well?

1       MR. ADAMS:  She initially was going to go with her,

2  but only her kids ended up going.  The reason for Ms. Smith not

3  going, I'm not real clear.

4       THE COURT:  All right.  In any event, did Ms. Smith

5  provide a credit card number when she made the phone call?

6       MR. ADAMS:  My understanding is that Ms. Smith made

7  the phone call to reserve the rooms because there was a special

8  where I think you could pack the room with kids if you wanted

9  for $89, and that would include Splash Lagoon access.

10      THE COURT:  Finally, and this will all shake itself

11  out, is it your understanding that Ms. Smith did or did not

12  represent to be Tanielle Shurney when she was on the phone?

13      MR. ADAMS:  Clearly not.  Clearly not.  What

14  happened was my client got out of jail, of course, the first

15  thing she did, because she was quite upset, was confront Ms.

16  Smith about that.  That's where there's a big dispute, as to

17  Ms. Smith -- my client is saying she didn't use the credit

18  card, that is what she did in fact say to my client.

19      MR. BAX:  And this Tonya Traylor is not related to

20  or know any of these individuals.

21     THE COURT: Has Ms. Smith been prosecuted?

22     MR. BAX: I don't know.

23     MR. ADAMS: No.

24     MR. BAX: The officer from the Streetsboro Police

25 Department will be able to tell what they decided to do. I

9

1 don't know if she was or was not.

2     MR. ADAMS: Of course, in my narrative, one of the

3 things obviously that should have happened here is that if

4 Trooper Pierce would have simply taken the information,

5 conducted an investigation, and instead of just not believing

6 my client and arresting her in the parking lot in front of the

7 kids and throwing her in jail for a week, we wouldn't be here.

8 That basically is where we're at. There is a duty to

9 investigate. If they would have, because I did the preliminary

10 hearing, that's one of the things I presume these individuals

11 here were not aware of. The only reason I got this case is it

12 came to me from the public defender and went to Judge Dwyer,

13 they call him District Judge Dwyer. Obviously, the people from

14 Splash Lagoon was there, Trooper Pierce was there, and we went

15   through the whole thing.  They dismissed the charge.  That was

16   basically it.

17           THE COURT:  All right.  I now know more than I did

18   before.  We'll get out a scheduling order on this thing.

19           MR. HUTTON:  Your Honor, the credit card history for

20   Ms. Shurney, we've asked for authorization over two months ago.

21   Part of the claim is I don't have credit cards when the

22   reservations were made.  Our information is the plaintiff made

23   the reservation.  Handed it to her sister.  If there was in

24   fact a third party she handed it to and in fact she did make a

25   reservation herself falsifying the identification on the person


                                  10


1   who gives a false credit card.  We want to find out Ms.

2   Shurney's credit card history to see if in fact she had a

3   credit card she could have placed a reservation on.

4           MR. ADAMS:  How do you know there is a third party?

5           MR. HUTTON:  Your client claims she handed it to

6   someone else, I don't know if that's true or not.

7           MR. ADAMS:  We never had --

8           MR. HUTTON:  Mr. Adams, I'm speaking now.

9        THE COURT: I'm speaking, hang on a second. I don't

10  mind if you argue, but he can't get this down if you're talking

11  over each other.

12        MR. HUTTON: I'm sorry.

13        THE COURT: What's your theory as to why you need

14  her credit card history?

15        MR. HUTTON: She claimed, when the reservations were

16  made, she needed a credit card, she didn't have a credit card,

17  I'm going to get it from my cousin. That's where the credit

18  card number came from. Now, if she has a credit card, then

19  this whole thing would be part of a conspiracy in making a

20  false claim. I think it's relevant to show whether or not she

21  in fact had a credit card, that when she made the phone call,

22  she could have put it on her account. If she has a card --

23        THE COURT: It's no less a crime --

24        MR. HUTTON: It's evidence of a crime.

25        MR. BAX: Your Honor, at the reservation center, and

11

1  I don't want to overstate anything, at the reservation center

2  there was a representation made by a woman who identified

3   herself as Tanielle Shurney, to the effect that I don't have a

4   credit card, I'll put my sister on, cousin, whomever, I'll put

5   her on the line or have her give you a call.  And so since the

6   use of a credit card is one of the material facts in this case,

7   Tanielle Shurney's card ownership would be relevant to

8   impeaching her credibility as to a number of different things.

9   If she told the people she doesn't have a credit card, but then

10  she does --

11          THE COURT:  Maybe this will simplify it.  Do you

12  know if she has a credit card?

13          MR. ADAMS:  My indication from her is that she

14  didn't.  I agree with counsel that in fact if a call was made

15  that in fact a third party had to make a reservation with a

16  credit card, but she didn't have a credit card.  I disagree

17  with counsel here in the case that my client then handed a

18  credit card to somebody.

19          THE COURT:  In any event, let's cut to the chase.

20  You want an authorization so you can look at the credit card

21  history up to the relevant time -- and according to you,

22  represented that she didn't have a card, is that right?

23          MR. HUTTON:  Yes, your Honor.

24          THE COURT:  Well, is there any argument about that?

25          MR. HUTTON: He wouldn't give the authorization

                              12

1  back.

2          MR. ADAMS: The authorization was for all of her --

3  basically, I don't have a copy with me, but it's a general

4  authorization for all of her finances and business background.

5          MR. HUTTON: You never responded to the request.

6          MR. ADAMS: We hadn't gotten the discovery schedule.

7          THE COURT: Let me just head off at the pass a

8  discovery dispute, I can do it right now, it's relevant, in my

9  opinion.

10         MR. ADAMS: I agree.

11         THE COURT: Execute an authorization.

12         MR. ADAMS: We'll execute an authorization providing

13 him to her credit card information. As the authorization was

14 proffered --

15         THE COURT: That's what you're primarily interested

16 in on this point, he'll tailor it down to that --

17         MR. ADAMS: I have no problem with that.

18         THE COURT: Okay, anything else. Mr. Bareford,

19  you're uncharacteristically quiet here today.

20          MR. BAREFORD:  Sir, just the way the judge sort of

21  identified the real issue, Trooper Pierce agrees that the issue

22  is not whether or not -- a legal justification or an

23  explanation in the extenuation or police investigation of the

24  underlying charge of credit card fraud.  Fraud is only relevant

25  if there existed probable cause at the time of the offense.


                                13


1  Trooper Pierce continues to assert that there clearly was.

2          MR. ADAMS:  To head off perhaps another issue then.

3  Trooper Pierce did indicate at the preliminary hearing that

4  this was not the first time that he had been subjected to

5  litigation and so we'll be sending some information requesting

6  his personnel file and any other aspects responsive to that.

7          THE COURT:  All right, we'll cross that bridge when

8  we get to it.  All right, thank you, counsel.

9

10          (Whereupon, at 9:28 a.m., the proceedings were

11  concluded.)

12

13                    - - -

14

15

16

17

18

19

20

21

22

23

24

25


                            14


1               C E R T I F I C A T E
                _ _ _ _ _ _ _ _ _ _ _

2

3

4     I, Ronald J. Bench, certify that the foregoing is a

5  correct transcript from the record of proceedings in the

6  above-entitled matter.

7

8

9

10  _____

11  Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25