IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


TANIELLE SHIRNEY,

                    PLAINTIFF


          vs.


SCOTT'S ECONO INN INC
SCOTT'S SPLASH LAGOON, INC

                                             No.CA 05-196 Erie

SEAN PIERCE, INDIVIDUALLY AND
IN HIS CAPACITY AS A TROOPER
OF THE PENNSYLVANIA STATE POLICE

JOHN DOE, INDIVIDUALLY AND IN
HIS CAPACITY AS THE SUPERVISOR
OF TROOPER SEAN PIERCE
                         DEFENDANTS



ON BEHALF OF TANIELLE SHURNEY PLAINTIFF



A.J. ADAMS, Esq.
ATTORNEY FOR PLAINTIFF
602 West 9th. Street
Erie, Pa. 16502
814-456-3681
Pa. # 34345

FILED
U.S. DISTRICT COURT
CLERK
'06 APR 25 P3:17

PROPOSED FINDINGS OF FACT

1. Officer Jon Hurley of the Streetsboro Ohio Police Department was the first
   recipient of the complaint filed by Tonya Traylor, the alleged victim of the
   debit number theft.

2. Officer Hurley learned that Lisa Chapman used the number prior to June
   30,2004.

3. Officer Hurley ended his investigation of Lisa Chapman when Ms. Traylor
   was reimbursed by Splash Lagoon/Econolodge.

4. Tracey Smith utilized the number for purchases other than Splah Lagoon.

5. Officer Hurley never investigated Tracey Smith.

6. Officer Hurley conducted no further investigation of this case after he
   referred the matter to the Pa. State Police.(hereinafter PSP)

7. Officer Hurley did not tell the PSP to arrest the Plaintiff.

8. Officer Hurley had no evidence that the Plaintiff used the debit card number.

9. On June 30, 2004, Ms. Traylor filed a written statement that Tracey Smith and
   Lisa Chapman used the number and provided their respective addresses.

10. Officer Hurley provided PSP with his investigative file on the day of the
    Plaintiff's arrest prior to her preliminary arraignment.

11. Ms. Traylor notified Splash Lagoon on June 30, 2004 regarding the theft.

12. Ms Traylor indicated that Lisa Chapman used the number and cancelled the
    reservation on July 2, 2004.

13. Splash Lagoon compensated her for the loss.

14. Ms. Traylor was never contacted by PSP at any time regarding this case.

15. The reservation center has no caller ID.

16. The reservation was made for the Plaintiff utilizing her home address.

17. The person who made the reservation for the Plaintiff indicated that her
    phone number was 216-323-6004.

18. The reservation center averages 1,000 telephone calls per day.

19. Tracey Smith was the person who made the reservation for the Plaintiff
    and provided an account number.

20. There was no need to confirm this reservation since the account number
    used is immediately debited.

21. It was not unusual for someone to have a reservation placed in their name

but have it paid for by a third party's credit/debit card.

22.  Noone at the reservation center can identify the Plaintiff by voice.

23.  The manager of the reservation center admitted that if Plaintiff's counsel would have attempted to make a reservation with a stolen credit/debit number that he would have been told that the card was stolen.

24. The manager admitted that she lied to a person who identified herself as the Plaintiff that she could check-in at noon and pick-up her waterpark passes even though the reservation had been cancelled.

25. The reservation center system does not have the capacity to obtain the name of the cardholder when the number is entered into their system.

26.  The manager never informed PSP that the reservation was made by Tracey Smith and that Lisa Chapman utilized the number as well even though the manager knew that the Plaintiff was going to be arrested despite being present at the time.

27.  Defendant Pierce conducted no investigation prior to arresting the Plaintiff.

28.  Defendant Pierce failed to consider a wealth of exculpatory evidence prior to filing the criminal complaint in this case.

29.  There were no exigent circumstances regarding the arrest since the Plaintiff provided appropriate identification, had no prior record, there were no outstanding warrants and the amount of the alleged loss was less than $200.00.

30.  The Plaintiff was lodged in the Erie County Prison for 7 days because of this arrest.

31.  District Judge James Dwyer dismissed all of the charges against the Plaintiff due to a lack of probable cause.

32.  The Plaintiff continually indicated that she never made any calls regarding the reservation nor was present at the time when the reservation was made.

33.  The Plaintiff waived her Miranda rights and indicated to Defendant Pierce that her cousin, Tracey Smith made the reservation in part because Ms. Smith's daughter was to accompany the Plaintiff.

34.  At that time, the Plaintiff also provided Tracey Smith's address.

From the outset, The Court has indicated that liability would be based upon the

Issue of probable cause.

The affidavit filed in the instant case states :" The accused did try to use a stolen credit card****to gain accommodations at the Econolodge located at******. The accused then Went to the Econolodge on 7/03/04 and signed for the room under the name Shurney, Tanielle attempting to pay for the room using a credit card that did not belong to her."

In order to obtain the arrest warrant in this case, Pierce was required to swear an

Oath that the facts contained in the affidavit were true. None of those allegations were

True. Consequently, an immunity defense is not available. Malley v. Briggs 106 S.Ct.

1092 (1986).

Pierce's false and misleading statements establishes a claim for malicious prosecution

Under Section 1983 since the Plaintiff's charges were dismissed for lack of probable

Cause.Since it is apparent from the record established that the Plaintiff was innocent of

Any wrongdoing, Pierce's failure to conduct a "reasonably thorough investigation"

Prior to making the arrest provides a second basis for denying his claim of qualified

Immunity. Kuehl v. Burtis 173 F.3d 646 (8th Cir. 1999); C.F. Gardenhire v. Schubert

205 F.3[rd] 303 (6th Cir. 2000); Baptiste v. J. C. Penney Co. 147 F.3[rd] 1252 (10th Cir.

1998).

Pierce is subject to a claim for false arrest since his conduct "purported to act

For the purpose of securing the administration of the law without actual legal

Justification." Gagliari v. Lynn, 285 A.2d 109, 111 (Pa. 1971). "One who confines

Another, while purporting to act by authority of law which does not in fact exist,

Makes a false arrest and must respond in damages. Id. At 285 A.2d 111; C.F.

Lynch v. Johnson, 463 A.2d 87,89 (Pa. Comm.1983); Cassidy v Abington Township

571 A.2d 543,544 (Pa. Comm. 1990).

Pierce is subject to a claim of false imprisonment since the Plaintiff was incarcerated for

A week prior to the dismissal of her charges for lack of probable cause. Renk v. City of

Pittsburgh, 641 A.2d 289,293 (Pa. 1994).

The Plaintiff's incarceration is a "special injury" for purposes of her malicious

Prosecution claim. Lynch v. Johnson, 463 A.2d 87,89(pa. Comm. 1983).

The malice requirement for purposes of the malicious prosecution claim can be

Inferred from the lack of probable cause. Lippay v. Christos, 996 F.2d 1490, 1502

(3rd. Cir. 1993).

There were no exigent circumstances regarding the arrest of the Plaintiff since

She provided significant identification. Further, Pierce knew before drafting the

Criminal complaint that she had no prior record, had no outstanding warrants

And the amount of loss to the Defendants was less than $200.00. Also, Plaintiff

Provided Pierce with the name and address of the person who made the reservation

That being the same person who Econolodge believed made the reservation.

Pierce not only failed to make an appropriate investigation, he conducted no

Investigation prior to arresting her in front of her children and friends.

Pierce failed to take into account the wealth of exculpatory evidence that he

Had, or should have had in his possession prior to making the arrest.

Officer Jon Hurley of the Stateboro Police Department specifically indicated

That he did not want to have the Plaintiff arrested but merely investigated as to

Her possible role in the use of the allegedly stolen number.

Regarding the liability of the remaining Defendants, Patty Purchase, as manager of The reservation center for both corporations, testified that she fully participated in the Arrest of the Plaintiff. She admittedly lied in an alleged phone call to someone who Identified herself as the Plaintiff by saying on the day before the arrest that the reser- Vation was valid and that the caller should appear the next day at noon. Ms. Purchase Knew from her own contacts with the owner of the debit card that the subject Reservation was cancelled. She further failed to tell the caller that the cancelled Reservation was allegedly made with a stolen debit card number. She also failed to notify The person whose telephone number was used in making the reservation of that alleged Fact.

Ms. Purchase also failed to notify Pierce that Tracey Smith made the reservation and That Lisa Chapman used the number to obtain other goods and services. By failing to Provide Pierce with this exculpatory evidence, she contributed to Pierce's decision To arrest the Plaintiff on cite. She further failed to indicate to Pierce that third parties Frequently make reservations for visitors at the Defendants' venues.

As indicated in prior pleadings, the law is abundantly clear: "However, as to many Employments, there is an implied authority to do all things that may be proper and Necessary for the protection of the master's property, and it has been held that where a Servant has reason to believe that property has actually been stolen and that the property Could be recovered by taking the supposed thief into custody, and the evidence showed Beyond question that the servant's objective in procuring the arrest of the Plaintiff was Not to vindicate public justice, but to recover the property or charges due thereon, the

Servant is acting within the scope of employment and the limits of implied authority

And the master is liable, HOWEVER ERRONEOUS, MISTAKEN OR MALICIOUS

THE ACT MAY BE. (emphasis added) 32 Am Jur 2d Section 50 p.89-90 with

Annotations.

The reservation system utilized by the subject corporations also contributes to

Their liability.  Despite the fact that the center receives approximately 1,000 calls

Per day, the system has no way of verifying the name on the account number pro-

Vided during the telephone reservation. The system does not have a way to verify

The telephone number being used to make the reservation nor are the conversations

Recorded.

Noone at the center knew or could recognize the voices of Tracey Smith or

Tanielle Shurney. Further, there is no circumstantial evidence that would render

Any of the alleged phone calls admissible.  It should be noted that the Plaintiff

Testified that she did not make any calls or witnessed any calls regarding the

Reservation.

From the outset, Plaintiff's counsel has indicated that Ms. Shurney was a truly

Innocent person who was arrested in this case solely because she was black.

Nothing in the Defendants' summary judgment filings indicate otherwise.

Her victimization continued throughout her deposition. The recent murder of

Her son was deemed irrelevant to the proceeding.

The Attorney General intimated her belief that the Plaintiff had committed

Perjury. To counter the Defendants' theory that Tracey Smith was not a real

Person and that this name was chosen because she shared the same initials, the

Plaintiff provided a description of Ms Smith, her family background, the names of her

Children and where and when she graduated from high school.

It is the Plaintiff that should be granted summary judgment against all of the

Defendants together with an apology and appropriate damages.

Respectfully Submitted,

A.J.Adams
Attorney for Plaintiff

1

1        UNITED STATES DISTRICT COURT

2     FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3           CIVIL NO. CA 05-196 Erie

4

5

6

7   TANIELLE SHURNEY                    )
                                        )
8           Plaintiff                   )      DEPOSITION
                                        )
9       VS.                             )          OF
                                        )
10  SCOTT'S ECONO INN, INC., ET AL.     )      JON HURLEY
                                        )
11          Defendants                  )

12

13        DEPOSITION taken before me, Jodie L. Algarin, a

14  Notary Public within and for the State of Ohio, on the

15  11th Day of January, 2006, pursuant to Notice and

16  Subpoena and at the time and place therein specified, to

17  be used pursuant to the Rules of Civil Procedure or by

18  agreement of counsel in the aforesaid cause of action,

19  pending in the United States District Court for the

20  Western District of Pennsylvania.

21

22

23

24

25                                         

NAGY-BAKER COURT REPORTING, INC.
(330) 746-7479
1-800-964-3376

2

1

2                              APPEARANCES

3

4           On Behalf of Plaintiff:

5           A.J. Adams, Attorney at Law
            602 West 9th Street
6           Erie, Pennsylvania   16502

7
            On Behalf of Defendant, Scott's Econo
8           Inn, Inc.:

9           Gerald J. Hutton, Attorney at Law
            Law Office of Baginski & Bashline
10          One PPG Place
            Suite 2910
11          Pittsburgh, Pennsylvania   15222-5409

12
            On Behalf of Defendant, Scott's Splash
13          Lagoon, Inc:

14          Gary D. Bax, Attorney at Law
            900 State Street
15          Suite 202
            Erie, Pennsylvania   16501
16

17          On Behalf of Defendant, Sean Pierce:

18          Susan H. Malone, Attorney at Law
            Office of Attorney General
19          Commonwealth of Pennsylvania
            Director of Western Region
20          6th Floor, Manor Complex
            564 Forbes Avenue
21          Pittsburgh, Pennsylvania   15219

22

23

24

25

19

1    some individuals that I'm noting in here -- did you

2    conduct an investigation with regard to the persons who

3    were listed as using the credit card, one Lisa Champman?

4    A                We did as much looking into it as we

5    could with the information that we had.  Had a name.

6    There was only so much follow-up with that, and then

7    subsequently we heard from Tonya Traylor, and she gave me

8    the information for Patty Purchase, and we went with that

9    lead first.

10   Q                Okay.  Well, what was the sum total of

11   your investigation regarding Lisa Champman?

12   A                Lisa Champman?

13   Q                Yes.

14   A                Contacted Tonya Traylor to see if

15   she -- if that name was familiar to her, and she said no,

16   it was not familiar to her.

17   Q                Okay.  I didn't mean to interrupt.  I

18   note from her written statement that she already

19   indicated the fact that she did not know who Lisa

20   Champman was.

21   A                Right.  I wanted to confirm that she

22   didn't know any names, Lisa Champman or Tonya Traylor --

23   I'm sorry, Tanielle Shurney.

24   Q                Is it safe to say, then, you took the

25   written statement from Ms. Traylor and then asked her

20

1    questions after you immediately read that statement?

2    A                Correct.

3    Q                And one of those questions was, did you

4    know Lisa Champman?

5    A                Correct.

6    Q                So after you found out she didn't know

7    Lisa Champman, what steps did you take to investigate

8    Lisa Champman's use of this card?

9    A                The information that we had on Lisa

10   Champman -- we had an address for her, okay, and once we

11   confirmed the address basically through the phone book

12   and crisscross book that we have, before we were able to

13   initiate speaking with this person, that's when Tonya

14   Traylor advised me of speaking with Patty Purchase and

15   that the person was going to come and fill the

16   reservation at the hotel.  And then at that point we went

17   with that lead first.

18   Q                And what name did you know to be

19   associated with the reservation at the hotel?

20   A                Tanielle Shurney.

21   Q                How did you get that information?

22   A                From Tonya Traylor.

23   Q                And is it your understanding that Tonya

24   Traylor got that from Ms. Purchase?

25   A                I don't know where she got that from.

1    I don't know where she got that from.

2    Q              Okay.  So now once you found out that

3    for whatever reason Tanielle Shurney's name was on this

4    reservation, what else did you do regarding Lisa

5    Champman?

6    A              Nothing.

7    Q              Is it safe to say that other than

8    checking her name in the crisscross directory and her

9    address, that that concluded the investigation?

10    A              Correct, because our victim, Tonya

11    Traylor, got compensation for her, so as far as -- our

12    investigation was done; the case was over.

13    Q              Okay.

14    A              From our end.

15    Q              And noting that you looked in the local

16    directory, I'm assuming Lisa Champman is someone within

17    your police department's jurisdiction?

18    A              No, she's not in our police department

19    jurisdiction.

20    Q              She's within the Ohio State Police

21    jurisdiction?

22    A              Correct.  Cleveland, Ohio.

23    Q              Did you make a referral to the Ohio

24    State Police so they could conduct an investigation

25    regarding Lisa Champman?

22

1    A              No.

2    Q              Is it safe to say that there's no

3    ongoing investigations of Lisa Champman regarding this

4    incident?

5    A              Not from Streetsboro's end.

6    Q              And do you know of any other police or

7    agency that is investigating Lisa Champman with regard to

8    this particular situation?

9    A              I don't know the answer to that.

10   Q              Is it safe to say that your

11   investigation regarding Lisa Champman ended when Tonya

12   Traylor was compensated for her loss regarding the car?

13   A              Correct.

14   Q              Now, was this a credit card or a debit

15   card?

16   A              I believe she said it was a credit/bank

17   card, like a checking card.

18   Q              Okay.  And did she show you the

19   statement that reflected the use of the credit card or

20   whatever it was for purposes of the direct marketing

21   purchases and the Splash Lagoon purchase?

22   A              No.

23   Q              So you never saw any documentation

24   regarding the transaction; is that a safe statement?

25   A              Yes.

23

1    Q                Okay.  Now, you also learned from Tonya

2    Traylor that she did not know Tanielle Shurney; correct?

3    A                Correct.

4    Q                Now, what do you know of Tanielle

5    Shurney as of today's date?

6    A                I don't know -- other than what the

7    Pennsylvania State Police report reflects.

8    Q                Okay.  Did you, when you heard the name

9    Tanielle Shurney, run what we call in Pennsylvania an

10   NCIC to determine whether or not she has any prior

11   involvement in the criminal justice system?

12   A                No, we didn't.

13   Q                Did you conduct any sort of

14   investigation regarding Tanielle Shurney at all?

15   A                No.

16   Q                Did you hear of any other names

17   associated with the reservation other than Tanielle

18   Shurney's?

19   A                I believe there was a Tracy Smith is

20   the other name that Tonya Traylor said was showing up on

21   whenever she was calling the places that had made -- that

22   were entries on her account that she was not familiar

23   with; the people she spoke with, that name came up.

24   Q                Okay.

25   A                Again, I don't know who gave that name.

1  That's just what Tonya Traylor gave.

2  Q                I never mean to cut you off.  I

3  apologize if I do.

4  A                Sure.

5  Q                How many references was Tracy Smith's

6  name on the Tonya Traylor card?  How many references; do

7  you know?

8  A                No, I don't.

9  Q                I see here in Tonya Traylor's statement

10 that the only indications of the use of the card involve

11 Lisa Champman.

12 A                Okay.

13 Q                Is there another part of her statement

14 that shows that, in fact, Tracy Smith used the card for

15 other purchases?

16 A                Not in her statement.

17 Q                Okay.  What information do you have

18 that led you to conclude that Tracy Smith had used the

19 card for something other than the Splash Lagoon

20 reservation?

21 A                The Tracy Smith entry in our names

22 section of my report came because it showed up on the

23 Pennsylvania State Police report.  From their end of the

24 investigation that name came up, so I placed it in my

25 name section of my report.

1   Q                 I see.  So when the state police in

2   Pennsylvania started their part of the investigation, the

3   name Tracy Smith somehow came up; and as a result of that

4   as a courtesy to your department, they faxed you that

5   name?

6   A                 Correct.

7   Q                 And as a result of you getting her name

8   faxed to you, did you conduct an investigation regarding

9   Tracy Smith?

10  A                 No.

11  Q                 Did you run an NCIC involving Tracy

12  Smith?

13  A                 No.

14  Q                 Did you do anything involving Tracy

15  Smith?

16  A                 No.

17  Q                 After you referred this matter to the

18  Pennsylvania State Police, did you do anything else at

19  all?

20  A                 No.

21  Q                 When the arrest of Ms. Shurney was

22  made -- and for your information it was in the parking

23  lot of this hotel -- were you subsequently contacted via

24  telephone or other means during the course of the arrest?

25  A                 Yes.

26

1   Q             And when were you contacted?

2   A             I don't know the exact time we were

3   contacted.  The dispatcher was contacted stating that

4   they had Tanielle Shurney and they needed the victim of

5   this report, Tonya Traylor.  They needed her information,

6   so we faxed her information, which shows on the teletype

7   to the Pennsylvania State Police.

8   Q             And that would be -- we don't need to

9   see it.  Obviously her demographic information --

10   A             Address.

11   Q             -- and the credit card number, things

12   of that nature?

13   A             Correct.

14   Q             So you did not indicate to the state

15   police that they should, in fact, arrest Ms. Shurney?

16   A             No.

17   Q             You just -- what exactly did you ask

18   the Pennsylvania State Police to do vis-a-vis Ms.

19   Shurney?

20   A             You're welcome to read the teletype.

21   Q             Why don't you just read it into the

22   record, because we'll all get copies of the transcript.

23   A             Okay.  A representative from Scott

24   Enterprises will contact you when the suspect arrives.

25   Can you go to Econo Lodge and identify the suspect and

1 | to release what information?

2 | A                   The address of the victim, and I don't

3 | know that Trooper Pierce -- I don't know who contacted

4 | the dispatcher.

5 | Q                   Okay.   Somebody from Pennsylvania State

6 | Police?

7 | A                   I would imagine so, yes.

8 | Q                   Have you done anything else after the

9 | time your dispatcher contacted you regarding this

10 | investigation at all?

11 | A                   After we received the initial contact,

12 | I came into work and was contacted -- it could have

13 | been -- I believe that was the second officer, maybe

14 | Gilson, Trooper Gilson.   Basically they were stating that

15 | they had this Tanielle Shurney in custody, and they also

16 | requested a copy of my report faxed to them at the same

17 | time.   I asked if they could fax a copy of their report

18 | to me, and that was the end of our contact.

19 | Q                   Okay.   And that was basically your end

20 | with regard to this investigation in total?

21 | A                   Correct.

22 | Q                   So none of the other uses of the card

23 | or no other subsequent investigations were maintained by

24 | you or this police department after you received that

25 | teletype information from the Pennsylvania State Police?

1    case was completed.  There was no further follow-up

2    needed.

3    Q              So you believe that it was one person

4    that was responsible for all the usages of the credit

5    card?

6    A              Like I said, when we requested just --

7    we never even got the complete identification of the

8    person going down to Erie, Pennsylvania, for the

9    reservation.  I just needed the information sent here.  I

10    mean, subsequently it was in the police report from the

11    state police.  Once they found that they had the suspect

12    in custody, you know, wanted to see what the proceeding

13    from that outcome of that before we proceeded any

14    further, if needed.

15    Q              It's safe to say you yourself or

16    members of your police department have no evidence

17    linking Ms. Shurney to the use of the card other than the

18    fact that she showed up and signed her name for the

19    reservation?

20    A              The only thing we have is our victim's

21    statement coming to the police station saying that that's

22    the name that was showing up on the card and that's the

23    reservation that Patty Purchase said was going to be

24    fulfilled.

25    Q              Just a few closing questions then.  Do

1    forward the information to Officer Hurley, Streetsboro

2    Police Department.

3    Q                Okay.  And then when Ms. Shurney

4    checked into the hotel, she was stopped by the trooper;

5    and then you were contacted by the trooper, and that

6    would be Trooper Pierce?

7    A                That's my understanding.

8    Q                Okay.  Do you recall the mode of

9    communication?  Was it a telephone call?

10    A                I wasn't at work yet.

11    Q                Okay.  How, in fact, were you contacted

12    then?

13    A                My dispatcher contacted me by phone at

14    home saying, I believe, it was Trooper Pierce who

15    contacted her, and the dispatcher was just wanting to

16    know what our end was.  And I said, yes, go ahead and

17    send her -- send state police Tonya Traylor's

18    information.  There's no problem with that.

19    Q                The dispatcher then, you believe, would

20    have received a telephone call as opposed to a teletype?

21    A                Right.  If there was a teletype, it

22    would have been in the report.

23    Q                Okay.  So then to the best of your

24    knowledge, Trooper Pierce contacts your dispatcher who

25    calls you at home, and then you authorize your dispatcher

32

1  you recall having any contact with anyone named Kristen

2  Mooney at Splash Lagoon?

3  A                That does not sound familiar.

4  Q                Sandy Calabris, C-A-L-A-B-R-I-S?

5  A                Again, doesn't sound familiar.

6  Q                Jeffrey Mona, M-O-N-A?

7  A                Doesn't sound familiar.

8  Q                And any other contacts with Trooper

9  Pierce other than what you've testified about?

10 A                No, I don't believe so.

11                  MR. ADAMS:  Okay.  Thank you very

12 much.  I have no further questions, Officer Hurley.

13 EXAMINATION:

14 BY MR. HUTTON

15 Q                My name is Gary Hutton.  I represent

16 Scott's Econo Lodge.  As I understand your testimony,

17 this matter came to your attention when credit card

18 check -- the card holder came to the Streetsboro Police

19 Department to file a complaint that her card had been

20 improperly accessed and was being used; is that correct?

21 A                Correct.

22 Q                And when she told you that, Ms. Taylor

23 told you that she had made inquiry and she had found at

24 least four uses of the card; is that correct?

25 A                Correct.

# Streetsboro Police Department

2080 SR 303 330-626-4976

*Uniform Incident / Offense Report*

**Incident Number**

*04-02502*

| In Progress | Method Received | Time Received | Time Dispatched | Time Arrived | Time Cleared |
|---|---|---|---|---|---|
| NO | IN PERSON | 2033 | 2040 | 2050 | 2116 |

| Report Date / Time | | Incident Occurred From | | Incident Occured To | |
|---|---|---|---|---|---|
| Date | Time | Date | Time | Date | Time |
| 06/30/2004 | 2050 | 06/29/2004 | 0000 | 06/29/2004 | 0000 |

Location of the Incident (Street #, Street, Apt. #, City, State, Zip)    Zone

**10039 DELORES  STREETSBORO OH 44241 -**    **S**

| Persons: | TONYA Y TRAYLOR - VIC | Property: | CREDIT CARD CHARGES |
|---|---|---|---|
| Involved: | TANIELLE L SHURNEY - SUS | 1 | |
| 4 | TRACY  SMITH - SUS | Amount: | |
| | LISA  CHAMPMAN - SUS | 0.00 | |

| Units: | Officers: | Officers: |
|---|---|---|
| 1st: | PTL JON HURLEY M | |
| 2nd: | PTL TROY BEAVER W | |
| 3rd: | | |
| 4th: | | |
| 5th: | | |
| Report: 538 | PTL JON HURLEY M | Photos: 0    Arrests: 0 |

| Codes: | Descriptions: | OFFENSES |
|---|---|---|
| 2699 | FRAUD (FREE TEXT) | |

Weapons Used:    Trade Marks:    Hate Bias

**NO WEAPON USED**    **NO**

Entry:    Location Type:

**Apartment Building**

| Refer to Arrest: | Incident #: | Tow#: | Dispatcher: 593 | Officer in Charge: 509 | Entry Id: 593 |
|---|---|---|---|---|---|

Case Status:    **Refer To Other Agency**    Cleared Date:    **07/17/2004**    Cleared By:  **507**

---

**Narrative:**    **04-02502**    **Page:    1**

The victim came to the Streetsboro Police Department to report someone using her bank/credit card.
The victim filled out a statement. Officers took the report and will begin the follow up on any leads and suspects.

---

**Reviewing Supervisor:** _____ **Bureau Supervisor:** _____ **Officer:** _____

# Streetsboro Police Department

**Incident Number**

*Persons Involved with Incident*          Page #      1

## 04-02502

---

| Incident #: | Master Number: | Relation: | | | | Arrest #: | Date of Contact: | |
|---|---|---|---|---|---|---|---|---|
| 0402502 | 001 | VICTIM | | | | | 06/30/2004 | |

| Last Name: | | First Name: | Mi: | Til: | DOB: | SSN: | Cell Phone: | Pager: |
|---|---|---|---|---|---|---|---|---|
| TRAYLOR | | TONYA | Y | | 07/21/1967 | 279721113 | | |

| Street #: | Street Name: | | Apt: | City: | | St: | Zip: | Phone: | Employee Phone: |
|---|---|---|---|---|---|---|---|---|---|
| 10039 | DELORES | | | STREETSBORO | | OH | 44241 | 330-422-0141 | |

| Hgt: | Wgt: | Hair: | Eyes: | Race: | Sex: | Physical Marks: |
|---|---|---|---|---|---|---|
| 503 | 160 | BLK | BRO | B | F | |

Offenses:     2699     FRAUD (FREE TEXT)

Resident Class:     Suspected of using:                          Victim Type:
                          /                          /              Individual

---

| Incident #: | Master Number: | Relation: | | | | Arrest #: | Date of Contact: | |
|---|---|---|---|---|---|---|---|---|
| 0402502 | 002 | SUSPECT | | | | | 06/29/2004 | |

| Last Name: | | First Name: | Mi: | Til: | DOB: | SSN: | Cell Phone: | Pager: |
|---|---|---|---|---|---|---|---|---|
| SHURNEY | | TANIELLE | L | | 04/12/1972 | 277726839 | | |

| Street #: | Street Name: | | Apt: | City: | | St: | Zip: | Phone: | Employee Phone: |
|---|---|---|---|---|---|---|---|---|---|
| 12626 | BRACKLAND UP | | | CLEVELAND | | OH | 44108 | 216-323-6004 | |

| Hgt: | Wgt: | Hair: | Eyes: | Race: | Sex: | Physical Marks: |
|---|---|---|---|---|---|---|
| | | | | B | F | |

Offenses:     2699     FRAUD (FREE TEXT)

Resident Class:     Suspected of using:                          Victim Type:
                          /                          /

---

| Incident #: | Master Number: | Relation: | | | | Arrest #: | Date of Contact: | |
|---|---|---|---|---|---|---|---|---|
| 0402502 | 003 | SUSPECT | | | | | 06/30/2004 | |

| Last Name: | | First Name: | Mi: | Til: | DOB: | SSN: | Cell Phone: | Pager: |
|---|---|---|---|---|---|---|---|---|
| SMITH | | TRACY | | | / / | | | |

| Street #: | Street Name: | | Apt: | City: | | St: | Zip: | Phone: | Employee Phone: |
|---|---|---|---|---|---|---|---|---|---|
| 2117 | EAST 7TH ST | | | CLEVELAND | | OH | 44106 | | |

| Hgt: | Wgt: | Hair: | Eyes: | Race: | Sex: | Physical Marks: |
|---|---|---|---|---|---|---|
| | | | | | | |

Offenses:     2699     FRAUD (FREE TEXT)

Resident Class:     Suspected of using:                          Victim Type:
                          /                          /

---

Reviewing Supervisor:                   Bureau Supervisor:                   Officer:

# Streetsboro Police Department

Incident Number

*Persons Involved with Incident*                    Page #      2

## 04-02502

| Incident #: | Master Number: | Relation: | | | | Arrest #: | Date of Contact: | |
|---|---|---|---|---|---|---|---|---|
| 0402502 | 004 | SUSPECT | | | | | 06/29/2004 | |

| Last Name: | | First Name: | Mi: | Til: | DOB: | SSN: | Cell Phone: | Pager: |
|---|---|---|---|---|---|---|---|---|
| CHAMPMAN | | LISA | | | / / | | | |

| Street #: | Street Name: | | Apt: | City: | | St: | Zip: | Phone: | Employee Phone: |
|---|---|---|---|---|---|---|---|---|---|
| 13411 | 6TH AVE | | | CLEVELAND | | OH | 44112 | 216-421-6050 | |

Hgt:    Wgt:    Hair:    Eyes:    Race: Sex:    Physical Marks:

Offenses:      2699        FRAUD (FREE TEXT)

Resident Class:        Suspected of using:                    Victim Type:
                              /                    /

Reviewing Supervisor:                    Bureau Supervisor:                    Officer:

# Streetsboro Police Department

*Property Involved with Incident*

**Incident Number**

*04-02502*

| Item #: | Item | | | | | Property Tag # |
|---------|------|--|--|--|--|----------------|
| 001 | CREDIT CARD CHARGES | | | | | |

**Make:**          **Model:**       **Serial #:**                                           **Quanity:**   **Unit Messure:**
                                                                                           4.00

**Value:**          **Owner Applied Number:**      **Type:**          **UCR Property Code:**          **NCIC#**
    416.70                                          Counterfeited/for

**Notes:**

**Reviewing Supervisor:**                **Bureau Supervisor:**                **Officer:**

# Streetsboro Police Department

**Investigative Report**  001  **Title / Subject:** credit card fraud                 **Page #:**  1

**Incident Number**

*04-02502*

On June 30,2004 Tonya Traylor came to the Streetsboro Police Department to report someone using her bank/credit card without her permission.

Traylor stated she checked her Key Bank account, master card( 5449270911030937), on June 30,2004 and noticed it was overdrawn. When she checked the account, there were charges that she did not make. The first charge was on 06/25/04 to Splash Lagoon Resort in Erie P.A. The amount was for $198.79. Traylor called the costumer service number, (814) 217-1111. They stated they are researching their records and they will contact Traylor when they have more information. The second charge was on 06/26/04 to Adelphia Oh. The amount was for $40.00. Traylor called the costumer service number, (888) 683-1000. They told Traylor to go to an Adelphia office to find out what account the charge was posted to. At this point, Traylor called a Key Bank representative at 1-800-key-2-you. The representative advised Traylor to file a fraud report at a Key Bank. While Traylor was at the bank she noticed two more charges on her account. The first charge was on 06/28/04 to Direct Marketing cosmetic. The amount was for $4.95. Traylor called the costumer service number, 888-415-4308. They reversed the charges and told Traylor that a Lisa Champman made the purchase. The second charge was on 06/29/04 to Direct Marketing Brylane Home. The amount was for $172.96. Traylor called the costumer service number, 800-528-5156. They stated Lisa Champman made the purchase through Lane Bryant. com. They stated Champman used a 44112 zip code.

Traylor stated she cancelled her card, 5449270911030937, on 06/30/04. Traylor will also be closing her bank account on 07/01/04.

On July 2,2004, Traylor called me to say Direct Marketing Brylane Home was going to reverse the charges. She also stated she was able to get in contact with a Patty Purchase, the reservation manager at Splash Lagoon, 8041 Peach St. Erie P.A. 16509. Purchase gave Traylor a phone number, (814) 868-9568, and told her to have the police call that number. I called Purchase at that number on July 2, 2004. Purchase is the manager for Splash Lagoon which is a part of Scott Enterprise. She stated that there was a reservation for 07/03/04 at the Econo Lodge, 8050 Peach St. Erie P.A. 16509, under the name of Tanielle Shurney. The Econo Lodge is also a part of Scott Enterprise. The reservation was made with Traylor's account number. She stated check in time was between 12pm and 4pm. I asked her to notify the State Police when Shurney came to check in. I called the State Police, (814) 898-1641, and spoke to Trooper Angelo. I advised him that a representative from Scott Enterprise might call him about a suspect checking into the Econo Lodge and if he could go and identify the suspect

On July 3,2004 at approximatley 2pm, I spoke with Trooper Gilson of The Penn. State Police. He stated the suspect was at the Econo Lodge. He needed the information on the victim, Tonya Traylor, sent to him. I had dispatch send a tele-type containing her information. On July 3,2004 at approximately 4pm., I spoke with Trooper Pirce of The Penn. State Police. He stated they had the suspect, Tanielle Shurney, in custody and were charging her with fraud and theft by deception. He also stated Shurney told the police that a friend, Tracy Smith, made the reservation. Trooper Pirce is going to fax their report to me with all their information. I received a copy of the Penn. State Police report on July 9, 2004, ( see attached report ). I spoke with Traylor and asked her if she knew a Tanielle Shurney. Traylor stated she did not know anyone by that name. Traylor did not know anyone by the name of Tracy Smith or Lisa Champman either. No further action taken.

.

**By:** PTL JON M. HURLEY                 **Badge#**  538      **Date:** 06/30/2004        **Time:** 2050

**Reviewing Supervisor:**_____      **Date:** _____

# Streetsboro Police Department

**Incident Number**

*04-02502*

**Investigative Report**  002   **Title / Subject:** fraud                                    **Page #:**   1

On 2/2/2005, Corporal Normandy from the Erie PA State Police spoke with me over the phone. The conversation was in regaurd to this report. He stated that Trooper Pierce was being investigated for the arrest of the suspect that went to the hotel to check in under the reservation. I am faxing a copy of this report to Corporal Normandy, at (814) 871-4782, on 2/2/2005.

**By:**  PTL JON M. HURLEY               **Badge#**   538      **Date:**  02/02/2005      **Time:**  2253

**Reviewing Supervisor:**_____     **Date:** _____

# Streetsboro Police Department

**Incident Number**

**04-02502**

**Investigative Report**  003   **Title / Subject:** Fraud                                   **Page #:**    1

I received a message, on my voice mail at work, from a Jerry ( Gerald ) Huton on Monday 8/29/2005 at 1:18p.m. He stated he represents Scott Enterprises and Econo Lodge. He stated Ms Shurney is suing the P.A. State Police and Scott Enterprises for discrimination. He requested for me to call him and set up a time to give a deposition. His number is (412) 434-0201. I also received a letter from Huton's office requesting the same.

I also received a call from Jerry Bax on Tuesday, 8/30/2005 at 9:40 a.m. He stated he represents Scott Enterprise, Splash lagoon. He requested I call him to answer some questions he has about my involvement in the matter dealing with Ms Shurney. His number is (814) 459-0234.

I will be giving this information to Chad Murdock, the City Law Director.

**By:**  PTL JON M. HURLEY                    **Badge#**   538      **Date:** 09/02/2005     **Time:** 0602

**Reviewing Supervisor:** _____      **Date:** _____

# Streetsboro Police Department

**Incident Number**

*04-02502*

**Investigative Report**  004    **Title / Subject:** Fraud                                  **Page #:**    1

I spoke with Chad Murdock and he advised me to contact Mr. Huton and Mr. Bax. I spoke with Mr. Huton on 9/08/2005 at 8:15 a.m. He stated he would contact me again if I was needed to give a deposition. I also spoke with Mr. Bax on 9/09/2005 at 8:45 a.m. He advised me of the same, that he would contact me if I was needed.

**By:** PTL JON M. HURLEY                 **Badge#**   538     **Date:** 09/19/2005      **Time:** 0336

**Reviewing Supervisor:**_____        **Date:** _____

# Streetsboro Police Department

**Incident Number**

*04-02502*

**Investigative Report**  005  **Title / Subject:** fraud                                  **Page #:**    1

I received a call from Gary Bax, Econolodge attorney, on 12-7-2005 at 10:51 a.m. He requested I contact him to set up a time for me to give a discovery deposition. The number he left for me to call was (814)459-0234. I called that number on 12-13-2005, at 8:00 a.m. and left a message stating I called and for Gary to call me back. I have not heard from Gary since the call on 12-7-2005.

**By:** PTL JON M. HURLEY                     **Badge#**   538     **Date:** 12/20/2005      **Time:** 2117

**Reviewing Supervisor:**_____  **Date:** _____

# Streetsboro Police Department

**Incident Number**

*04-02502*

**Investigative Report**  006   **Title / Subject:** fraud          **Page #:**   1

I received a call from Gary Bax on 12-23-2005 at 3:52p.m. He was requesting to come to the SPD to take my deposition on 12-29-2005. I returned his call and told him I would check with my supervisors. After checking with LT. Mosley and Chief Taiclet, I called Gary back and left a message stating the 29th would not work. I told him Monday through Friday after 1-7-2006 would be better. I have not yet confirmed a new date.

---

**By:** PTL JON M. HURLEY          **Badge#**   538      **Date:** 12/31/2005      **Time:**  0506

**Reviewing Supervisor:**_____   **Date:** _____

**STREETSBORO POLICE DEPARTMENT**
**STREETSBORO, OH 44241**

| CR 0402502 | **STATEMENT** | INCIDENT Credit Card Fraud |
|---|---|---|

On 6/30/04 I checked my Key Bank acct on line as I do on most days. My acct was overdrawn & when I looked at the details there were to charges to my acct which I did not make. The charges were:

1) Splash Lagoon Resort Erie, PA $ 198.79
   - phone number 814.217.1111 - They are researching their records & will call me ba
2) Adelphia OH $ 40.00
   - phone number 888-683-1000 - told me to go to an office & find out what acct it was posted to

I went to the bank to file a fraud report after speaking with a customer rep for key. 1800 key-2-you. While at the bank, my account showed two additional charges which had not yet been posted to my acct. They are as follows:

3) Direct Marketing - Cosmetique $ 4.95
   phone number 888-415-4308
   They reversed the charge on my acct & told me a Lisa Chapman made the purchase. I do not know who she is.

4) Direct Marketing - Brylane Home $ 172.96
   phone number 800-528-5156.
   I was told again that Lisa Chapman made the purchase through LaneBryant.com & her zip →

| STATEMENT MADE BY – NAME Tonya Traylor | DATE OF BIRTH 7-21-1967 | SSN 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 | |
|---|---|---|---|
| ADDRESS 10039 Delores Dr Apt B | CITY Streetsboro | STATE OH | PHONE NUMBER 330.422.0141 |
| WITNESSED BY | UNIT 5150 | DATE 6/30/04 | PAGE 1 |

code is 44112. They gave me a number to call their fraud dept. Which I will call on 7/1/04.

I closed my debit card & will be reissued a new card & number. I plan to close my bank acct, but have not done so yet.

I was told to file a police report so that the bank could continue with their attempt to restore my hard earned money back to me.

**NOTICE – MIRANDA WARNING: To anyone under arrest, detained for investigation, a suspect in a crime or being investigated as a suspect or possible suspect in a crime.**

This statement is made of my own free will and accord, subsequent to the advisement of the following facts by the undersigned police office. I understand that: 1. I have the right to remain silent. 2. Anything I say can/will be used against me in a court of law. 3. I have the right to talk to a lawyer before any questioning and have him present with me while I am being questioned. 4. If I cannot afford to hire a lawyer, one will be appointed to represent me before any questioning if I wish. 5. I can decide at any time to exercise these rights and not answer any questions or make any statements.

Signed _Tonya Traylor_

Date _6/30/04_    Time _8:40 pm_    Location _Streetsboro Police Dept._

Witness _____

0402502

# PENNSYLVANIA STATE POLICE

**TROOP E, ERIE**
**4320 IROQUOIS AVENUE**
**ERIE, PA· 16511**
**(814) 898-1641**



*Fax: (814) 217-0059*

## FAX TRANSMISSION COVER SHEET

**Date:**   July 9, 2004

**To:**   Officer HURLEY

**From:**   Tpr. PIERCE

**Re:**   *ACCESS DEVICE FRAUD*

**Memo:**   *This is the report regarding SHURNEY for the stolen credit card of Tracy TRAYLOR.*

---

**YOU SHOULD RECEIVE _0.5_ PAGE(S), INCLUDING THIS COVER SHEET. IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (814) 871-4682, EXT. 217.**

---

CONFIDENTIALITY NOTE:  The document(s) accompanying this facsimile transmission contain information that is confidential and privileged and is intended only for the use of the addressee designated above.  If you are not the intended recipient, you are hereby notified that disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly prohibited.  If you receive this facsimile in error, please notify the Pennsylvania State Police and return the original message to our office by mail.

SP 7-0000 (12-04)
**PENNSYLVANIA STATE POLICE**
**INCIDENT REPORT**

| REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | INCIDENT NO. |
|---|---|---|
| ☒ INITIAL ☐ CONTINUATION ☐ SUPPLEMENTAL | 07/03/04 SAT | E01-1097681 |
| | TIME(S) OF INCIDENT 1357HRS | JUVENILE ☐ DOMESTIC VIOLENCE ☐ |

**ATTACHMENTS:**
- ☐ MISSING PERSON CHECKLIST
- ☐ FELONY CRIMES AGAINST THE PERSON
- ☐ STATEMENT FORM(S)
- ☒ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT
- ☒ RIGHTS WARNING AND WAIVER
- ☐ PROPERTY RECORD ☐ OTHER

DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE
- A ☐ DEATH OF ACTOR
- B ☐ PROSECUTION DECLINED
- C ☐ EXTRADITION DENIED
- D ☐ VICTIM REFUSED TO COOPERATE
- E ☐ JUVENILE/NO CUSTODY
- N ☒ NOT APPLICABLE
- ☐ MULTIPLE CLEAR-UP

| 1. ORI/STATION PAPSP2500/ERIE | 2. LOCATION Econo Lodge 8050 Peach St. | ZONE 07 |
|---|---|---|
| 3. CITY/TWP/BORO Summit Twp. | CODE 216 | 4. COUNTY ERIE | CODE 25 |

| 5. VICTIM NO. 1 NAME Econo Lodge | ADDRESS 8050 Peach St. Erie, PA 16509 | HOME PHONE 814-866-5544 |
|---|---|---|
| 6. EMPLOYER NAME | ADDRESS | WORK PHONE |

| 7. RACE/ETH. / | 8. SEX | 9. DOB | 10. AGE | 11. RES. STAT. R | 12. REL. TO OFFENDER(S) ST | 13. TYPE INJ. | 14. CIRC. | 15. CON. TO OFF. 01 | 16. TYPE VICT. B | 17. OFF. NO. REL. 01 |
|---|---|---|---|---|---|---|---|---|---|---|

| 5. VICTIM NO. 2 NAME | ADDRESS | HOME PHONE |
|---|---|---|
| 6. EMPLOYER NAME | ADDRESS | WORK PHONE |

| 7. RACE/ETH. / | 8. SEX | 9. DOB | 10. AGE | 11. RES. STAT. | 12. REL. TO OFFENDER(S) | 13. TYPE INJ. | 14. CIRC. | 15. CON. TO OFF. | 16. TYPE VICT. | 17. OFF. NO. REL. |
|---|---|---|---|---|---|---|---|---|---|---|

**18. OFFENSE**
- ___ SIMPLE ASSAULT
- ___ BURGLARY
- ___ ESCAPE
- ___ CRIMINAL MISCHIEF
- ___ MISSING PERSON
- ___ AGGRAVATED ASSAULT
- ___ TERRORISTIC THREATS
- ___ HARASSMENT
- ___ ARSON BY RELATED OFFENSES
- ___ THEFT BY UNLAWFUL TAKING OR DISPOSITION
- ___ CONTROLLED SUBSTANCE, DRUG, DEVICE AND COSMETIC ACT
- ___ HARASSMENT BY COMMUNICATION OR ADDRESS

01 OTHER THEFT BY DECEPTION, 02 ACCESS DEVICE FRAUD

| 19. NO. | 20. STATUTE | 21. SECTION NO. | 22. UCR | 23. HATE/BIAS | 24. OFF. USED | 25. OFF. LOC. | 26. ETY. METH., NO. | 27. ACTY. TYPE | 28. WPS/PC | A |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | CC | 3922 | 110 | 88 | N | 14 | | P | | |
| 02 | CC | 4106 | 110 | 88 | N | 14 | | P | | |

**29. VEHICLE:** ☐ STOLEN ☐ RECOVERED ☐ SUSPECT ☒ OTHER

| 30. LIC DAA8438 | 31. LIS OH | 32. LIY 05 | 33. LIT PC | 34. VIN 1MEFM53S4XG615112 | 35. VYR 1999 | 36. VMA MERCURY |
|---|---|---|---|---|---|---|
| 37. VMO | 38. VST SDN | 39. VCO | 40. DOT | 41. MIS | | 42. MILEAGE |

| 43. NO. | 44. PROPERTY DESCRIPTION | 45. PRD. DESC. | 46. TYPE LOSS | 47. QTY. | 48. VALUE | 49. DATE REC. |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 50. | | YES | NO | | YES | NO |
|---|---|---|---|---|---|---|
| | INCIDENT PROMPTLY REPORTED BY VICTIM | ☒ | ☐ | NEIGHBORHOOD/AREA CANVASS | ☐ | ☒ |
| | CAN A SUSPECT BE NAMED | ☒ | ☐ | ANY WITNESSES LOCATED | ☒ | ☐ |
| | EVIDENCE AT SCENE TO LINK OFFENDER | ☒ | ☐ | OFFENDER INFORMATION AVAILABLE | ☒ | ☐ |
| | CAN A VEHICLE BE IDENTIFIED WITH CRIME | ☐ | ☒ | IDENTIFIABLE/TRACEABLE PROPERTY | ☒ | ☐ |
| | SCENE PROCESSED FOR LATENT PRINTS | ☐ | ☒ | UNIQUE/UNUSUAL METHOD OF OPERATION | ☐ | ☒ |
| | LATENT PRINTS DISCOVERED | ☐ | ☒ | THOUGHT TO BE CONNECTED WITH KNOWN CRIME PATTERN | ☐ | ☒ |
| | SCENE CHECKED FOR WITNESSES | ☒ | ☐ | CLEAN/STATISTICAL NARCOTICS MESSAGE SENT | ☐ | ☒ |

| 51. DATE/TIME OFFICER ARRIVED 07/03/04 / 1358 | 52. DATE/TIME OFFICER DEPARTED 07/03/04 / 1630 | 53. DATE OF REPORT 07/05/04 | 54. PART ONE ONLY ☐ | 55. LOC NOTIFIED ☐ YES ☐ NO | 56. SURV. WIT./BADGE NO. |
|---|---|---|---|---|---|
| 57. OFFICER'S NAME/SIGNATURE Tpr Sean T. PIERCE | | BADGE NO. 8961 | 58. INVES. RECD. ☒ CONT. ☐ TERM. | 59. ☐ CONCUR ☐ NONCONCUR | 60. PAGE 01 |

STATION

SP 7-305... (12-74)    JUL. 9, 2004 1:30PM    PSP ERIE TROOP    NO. 327    P. 3

| PENNSYLVANIA STATE POLICE | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | | INCIDENT NO. |
|---|---|---|---|---|
| **INCIDENT REPORT – PART II** | ☒ INITIAL  ☒ CONTINUATION ☐ SUPPLEMENTAL | | | E01-1097681 |
| | | TIME(S) OF INCIDENT | JUVENILE ☐ | DOMESTIC VIOLENCE ☐ |

| ATTACHMENTS: | ☐ MISSING PERSON CHECKLIST | DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | A ☐ DEATH OF ACTOR       D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED       E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD | ☐ OTHER | ☐ EXTRADITION DENIED       N ☒ NOT APPLICABLE       ☐ MULTIPLE CLEAR-UP |

| 61. ORI/STATION | 62. DATE OF REPORT | 63. OFFENSE |
|---|---|---|
| PAPSP2500/ERIE | 07/05/04 | THEFT BY DECEPTION |

| 64. ☒ ACCUSED ☐ SUSPECT | 65. OFFENDER NO. 1 | NAME Tanielle L. SHURNEY | 66. ADDRESS 12626 Brackland Up, Cleveland, OH 44108 |
|---|---|---|---|

| 67. HOME PHONE | 68. NICKNAMES/ALIAS | 69. HEIGHT | 70. WEIGHT | 71. HAIR | 72. EYES | 73. MARITAL STATUS |
|---|---|---|---|---|---|---|
| 216-323-6004 | | 504 | 190 | BLK | BRO | |

| 74. RACE/ETHY. | 75. SEX | 76. DOB | 77. AGE | 78. RES. STAT. | 79. OFF. CODE | 80. TYPE ARREST | 81. DATE OF ARREST | 82. ARMED WITH | A | 83. OTN/NON-TRAFFIC CIT. NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| B / N | F | 04/12/72 | 32 | N | 110 | S | 07/03/04 | | | L 199495-3 |

| 84. FINGERPRINTED ☒ YES ☐ NO | 85. PHOTOGRAPHED ☒ YES ☐ NO | 86. DISP. UNDER 18 | 87. VIC. NO. REL 01 | 88. SSN 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 | 89. OLN RP839298 | STATE OH |
|---|---|---|---|---|---|---|

| 90. BIRTHPLACE OHIO | 91. EMPLOYER/SCHOOL | 92. MISC. NO. |
|---|---|---|

| 64. ☐ ACCUSED ☐ SUSPECT | 65. OFFENDER NO. 2 | NAME | 66. ADDRESS |
|---|---|---|---|

| 67. HOME PHONE | 68. NICKNAMES/ALIAS | 69. HEIGHT | 70. WEIGHT | 71. HAIR | 72. EYES | 73. MARITAL STATUS |
|---|---|---|---|---|---|---|
| | | | | | | |

| 74. RACE/ETHY. | 75. SEX | 76. DOB | 77. AGE | 78. RES. STAT. | 79. OFF. CODE | 80. TYPE ARREST | 81. DATE OF ARREST | 82. ARMED WITH | A | 83. OTN/NON-TRAFFIC CIT. NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| / | | | | | | | | | | |

| 84. FINGERPRINTED ☐ YES ☐ NO | 85. PHOTOGRAPHED ☐ YES ☐ NO | 86. DISP. UNDER 18 | 87. VIC. NO. REL | 88. SSN | 89. OLN | STATE |
|---|---|---|---|---|---|---|

| 95. BIRTHPLACE | 91. EMPLOYER/SCHOOL | 92. MISC. NO. |
|---|---|---|

**92. NARRATIVE**

LATITUDE: 42 02:53.54       LONGITUDE: 80 04:47.83

This crime occurred as the accused used a stolen credit card, MasterCard #5449270911030937, to reserve a room at the Econo Lodge, Central Reservation # 411293, for the days of 07/03/04-07/04/04 at an amount of $198.79. The accused then arrived at the hotel at 1357hrs on 07/03/04 and signed for the room at the expense of using the stolen credit card, which belongs to a Tonya Y TRAYLOR of 10039 Delores, Streetsboro, OH 44241, and used said MasterCard without the authorization of TRAYLOR.

PHYSICAL EVIDENCE: Documents from Splash Lagoon Reservation Center with SHURNEY'S name and Account# of the stolen MasterCard. Receipt signed by SHURNEY for acceptance of the room rate by payment by stolen MasterCard.

On 07/03/04 at approx. 1400hrs, I interviewed in person, on scene, Guest Service Agent, Wendy Marie EMERY W/N/F- 21YRS (10/14/1982), of 483 Washington St., Conneaut, OH 45030, 440-265-5290. EMERY related to me that SHURNEY arrived at the Econo Lodge to stay in a room she had reserved for the dates of 07/03/04-07/04/04 under MasterCard Account# 5449270911030937. EMERY related that SHURNEY signed for the room using that MasterCard Account#, but did not have the MasterCard on her person. EMERY then related that she completed the transaction as normal, made a photo copy of SHURNEY'S driver's license and receipt of payment that was signed by SHURNEY.

On 07/03/04 at 1421hrs, SHURNEY was placed under arrest and transported back to PSP Barracks Erie for processing.

On 07/03/04 at 1500hrs SHURNEY was read her Miranda Rights and she waived her rights.

(MORE)

| 94. OFFICER'S NAME/SIGNATURE Tpr Sean T. PIERCE | BADGE NO. 8961 | 95. INVES. RECM. ☒ CONT. ☐ TERM. | 96. SUPV. INIT./BADGE NO. | 97. ☐ CONCUR ☐ NONCONCUR | 98. PAGE 02 |
|---|---|---|---|---|---|
| | | STATION | | | |

JUL. 9. 2004 1:30PM PSP ERIE TROOP E NO. 327 P. 4

| SP 7-285 (5-96) | | REPORT TYPE | | DATE(S)/DAY(S) OF INCIDENT | | IR NO. |
|---|---|---|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | | ☒ INCIDENT | | | | E01-1094336 |
| CONTINUATION SHEET ☒ | | ☐ OTHER | | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | | | | ☐ | ☐ |

| ATTACHMENTS: | ☐ MISSING PERSON CHECKLIST | DISP.: ☒ CLEARED BY ARREST  ☐ UNFOUNDED  ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ FELONY CRIMES AGAINST THE PERSON   ☐ STATEMENT FORM(S) | | A ☐ DEATH OF ACTOR      D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT  ☐ RIGHTS WARNING AND WAIVER | | B ☐ PROSECUTION DECLINED    E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD   ☐ OTHER | | C ☐ EXTRADITION DENIED    N ☒ NOT APPLICABLE     ☐ MULTIPLE CLEAR-UP |

| 1. ORI/STATION | | 2. DATE OF REPORT |
|---|---|---|
| PAPSP2500/ERIE | | 07/05/04 |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| THEFT BY DECEPTION | Econo Lodge |

**5. NARRATIVE**

    On 07/03/04 at 1510hrs, I interviewed in person, at PSP Barracks, Tanielle L. SHURNEY B/N/F-32YRS (04/12/1972) of 12626 Brackland Up, Cleveland, OH 44108. SHURNEY related to me that she did not have the credit card on her, and that the reservations were made through a friend, Tracy SMITH of 2117 East 74th St, Cleveland, OH 44106. SHURNEY then related to me that she did not attempt to call to confirm the reservations for the room, and that she just showed up on 07/03/04 at the Econo Lodge under the assumption that everything was taken care of.

FS QIC:NEG
FS MN: POS
Criminal history has been destroyed.

This case is to remain open pending disposition.

| OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☐ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| Tpr. Sean T. PIERCE | 8961 | ☒ CONT. ☐ TERM. | | ☐ NONCONCUR | 03 |
| | | STATION | | | |

JUL. 9. 2004— 1:30PM    PSP ERIE TROOP E    NO. 327    P. 5

SP-7-001

| PENNSYLVANIA STATE POLICE | DATE(S)/DAY(S) OF INCIDENT 07/03/04 / Saturday | | NO. E01-1097681 |
| CONTINUATION SHEET ☐ | ☒ INCIDENT | | |
| SUPPLEMENTAL INVESTIGATION REPORT ☒ | ☐ OTHER ___ | | |

| | TIME(S) OF INCIDENT 1357 hours | JUVENILE ☐ | DOMESTIC VIOLENCE ☐ |

| ATTACHMENTS: | ☐ MISSING PERSON CHECKLIST | DISP.: ☐ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- |
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | A ☐ DEATH OF ACTOR       D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED       E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD       ☐ OTHER | | C ☐ EXTRADITION DENIED       N ☒ NOT APPLICABLE       ☐ MULTIPLE CLEAR-UP |

| 1. ORI/STATION PAPSP2600/ERIE | 2. DATE OF REPORT 7/3/04 |
| 3. OFFENSE | 4. VICTIM |

5. NARRATIVE

   On 07/03/04 I was assigned to transport Tanielle L. SHURNEY from PSP-Erie to her arraignment at District Court 06-3-02.  She was arraigned by D. J. ABATE and committed to Erie Co. Jail in lieu of $5,000.00 straight bail.  She was then transported to Erie Co. Jail.
   I was accompanied by Tpr. ANGELO.

| 6. OFFICER'S NAME/SIGNATURE/BADGE/NO. Tpr. Linda M. MARTON/8400 | 7. INVEST. RECM. ☒ CONT. ☐ TERM. | 8. SUPV. INIT./BADGE NO. | 9. ☐ CONCUR ☐ NONCONCUR | 10. PAGE 1/1 |
| STATION | | | | |

# COMMUNITIES

*From staff reports*

## WOOSTER

### College chief to retire

College of Wooster President R. Stanton Hales, 63, announced Monday that he will retire in 2007, capping 17 years at the college, including 12 as its president. During his tenure, applications for admission increased 39 percent, the college's endowment grew from $114 million to $237 million, numerous construction and renovation projects were completed and new majors like biochemistry and molecular biology were introduced. Hales, who earned his doctorate in mathematics from Harvard University, plans to keep a busy schedule.

# LAW & ORDER

*From staff reports*

## LORAIN

### 2 men arrested in slaying

Lorain police have arrested two men in the killing of Edgardo Alicea, a convicted drug trafficker whose body was found three weeks ago near a railroad trestle in Lorain, said Lt. James Rohner. Jonathan Robles-Cruz, 21, was arrested Friday night at his mother's apartment and charged with aggravated murder. The same charge will be filed against Christopher Birriel-Torres, 19, who is in the Lorain County Jail on other charges, police said. Robles-Cruz and Birriel-Torres moved to the area less than six months ago from Puerto Rico. A man walking on a path near the Black River boat launch discovered Alicea's body on Jan. 9. Police found his car in a bar parking lot near where one of the accused men lives. Police would not disclose how Alicea, 26, was killed.

## LORAIN COUNTY

### Man held in gas station heist

The Lorain County Sheriff's Office arrested Warren Daniels, 36, of Lorain, after he clubbed and robbed a clerk at a gas station, police said. Lorain police said they connected Daniels to two other robberies in which he used a large flashlight or pipe to club the arms of convenience store clerks while they opened cash register drawers. Daniels robbed two stores last week in Lorain and a gas station in Sheffield Township, police said. In 1994, Daniels was sentenced to nine to 25 years in prison for robberies and felonious assault.

## COLUMBUS

### Prison compensation sought

Clarence Elkins, who was wrongfully convicted and imprisoned for six years for the death of his mother-in-law and rape of his niece, filed Monday for compensation in the Ohio Court of Claims. The action, filed against the state, is not likely to be contested since Attorney General Jim Petro endorsed the effort to free Elkins after DNA tests on evidence cleared the Stark County man. Elkins, 42, was convicted in 1999 and released Dec. 15. His compensa-

# Fight in Flats killed

## Teen was contender as Glenville starter

GABRIEL BAIRD
*Plain Dealer Reporter*

On the last day of Anthony Gordon's life, the 16-year-old boy went with his younger brother and a cousin to a barber to get haircuts.

Anthony, a Glenville High School student, came home with a fresh cut and primped for a Saturday night out with friends. But his great aunt Victoria Davis was apprehensive about him staying out late. She thought he should stay home.

"Oh auntie," he told her. "I'm all right."

His mother, 33-year-old Tanielle Shurney, assumed her middle son was going to another harmless teenage dance. Anthony went to Kaos nightclub in the Flats. Radio One DJs had hosted "Top Shelf Saturdays" at the club until earlier this month. Saturday night was a teen night.

Fights broke out after midnight and spilled into the streets. The brawls raged so out of control police called for backup from three districts. Police arrived as fistfights gave way to gunshots, leaving Anthony dead.

Police have no suspects in his slaying. Anyone with information is asked to call detectives at 216-623-5464.

Students cried in the halls Monday at Glenville High School, said Chaz Hughes, a 17-year-old senior. At the end of the day, he and several friends played basketball and regaled their former classmate's skills as a run-

ning back on the football team.

"Next year he would have started varsity," Chaz said.

These sentiments were echoed by Rob McQueen, 39, who coached Anthony for three years on the Glenville Titans, a Cleveland municipal football league team.

"Anthony was a kid who never griped about anything," McQueen said.

McQueen vowed to keep Anthony's memory alive by retiring his jersey number.

Anthony's family gathered Monday evening in East Cleveland, bringing food, prayers and their favorite memories of Anthony.

The close-knit family gathers weekly for Soul Food Sundays. Anthony's favorite foods were macaroni and cheese and hamburgers, Davis said.

But at these family gatherings, he was as concerned with music as he was with the grub.

"He would DJ," she said.

Davis said she didn't think the death would really sink in until today, when they plan to view his body at the funeral home.

*Family members have set up the Anthony Gordon Memorial Fund to help pay for the funeral. Donations can be made at any KeyBank branch.
Plain Dealer researcher Cheryl Diamond contributed to this story.*

**To reach this Plain Dealer reporter:**
gbaird@plaind.com, 216-999-4141



Anthony Gord[...] for Glenville [...] was gunned [...]

# Peace activists stage 'spy-[

## Homeland Security cars bracket outdoor protest at federal b[

BRIAN ALBRECHT
*Plain Dealer Reporter*

The watched became the watchers Monday.

Trench coats and shades. The surreptitious passing of a mysterious black briefcase. Cameras and binoculars focusing on — none of your business.

Someone singing the refrain to "Secret Agent Man."

It was guerrilla theater staged outside the Celebrezze Federal Building about 7:30 a.m. by the Northeast Ohio Anti-War Coalition (NOAC)



1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CIVIL NO. CA 05-196 Erie

TANIELLE SHURNEY                )
                                )
        Plaintiff               )          DEPOSITION
                                )
    VS.                         )             OF
                                )
SCOTT'S ECONO INN, INC., ET AL. )        TONYA TRAYLOR
                                )
        Defendants              )

    DEPOSITION taken before me, Jodie L. Algarin, a
Notary Public within and for the State of Ohio, on the
11th Day of January, 2006, pursuant to Notice and
Subpoena and at the time and place therein specified, to
be used pursuant to the Rules of Civil Procedure or by
agreement of counsel in the aforesaid cause of action,
pending in the United States District Court for the
Western District of Pennsylvania.



15

1  A                I can't remember the date, but I have

2  it on here.  I called Splash Lagoon on June 30, same day.

3  Q                And do you recall the time of day that

4  you called Scott Splash Lagoon or not?

5  A                No.

6  Q                Was it during working hours or during

7  daytime hours?

8  A                I don't know.

9  Q                Okay.  What contact did you have with

10 Splash Lagoon or the reservation center?

11 A                I called Splash and I told them about

12 the transaction, and they told me to call back on July 2

13 and speak with Patty Purchase, the reservations manager.

14 Q                Do you recall the name of the person

15 that you spoke with on June 30?

16 A                I do not.

17 Q                Did you tell the persons on June 30 or

18 the person on June 30 at Splash Lagoon resort that you

19 had not authorized any reservation to be made using your

20 debit card number?

21 A                I don't remember.  I don't -- that was

22 my whole purpose of the call.

23 Q                But you have no specific recollection?

24 A                Huh-uh.

25 Q                You have to say yes or no.  You have no

16

1   specific recollection; is that correct?

2   A                Yes.

3   Q                Did you speak with one person or more

4   than one person on June 30?

5   A                I don't know.

6   Q                Okay.  Did you then call and speak with

7   Patty Purchase on July 2, 2004?

8   A                Yes.

9   Q                You contacted her then; correct?

10  A                Yes.

11  Q                Okay.  And what do you recall of that

12  conversation?

13  A                We talked about a lot of different

14  things, but basically they were able to find the

15  reservation under my name and said that the person was

16  expected to arrive at the hotel on July 3.

17  Q                Were you provided with the name

18  Tanielle Shurney at that point in time?

19  A                No.

20  Q                Okay.  Were you provided with any other

21  name at that time?

22  A                No.

23  Q                Okay.  And did you then have contact

24  with Officer Jon Hurley of the Streetsboro Police

25  Department?

17

1    A                Yes.  I called him -- you want me to

2    expand?

3    Q                Yes.  Sure, please.

4    A                I called him and just told him that I

5    spoke with Splash Lagoon and the person was expected to

6    show up on July 3.  And he said he would follow up or do

7    whatever police do.

8    Q                Why did you contact Officer Hurley

9    regarding this unauthorized use of your debit card?

10    A                Well, first of all, because I wanted

11    whoever it was to be busted.  Like I was mad.  I'm like

12    they got a lot of nerve.  So I was glad to know that they

13    actually booked something and maybe they could get

14    caught.

15    Q                Was it your belief that your debit card

16    number had been stolen and used improperly?

17    A                Not the card stolen, the number stolen,

18    yes.

19    Q                Okay.  And did you come to the

20    Streetsboro Police Department on June 30 of 2004?

21    A                Yes.

22    Q                And did you meet with Officer Hurley?

23    A                Yes.

24    Q                Do you recall that there was a second

25    officer there, an Officer Beaver?  Do you recall that or

18

1   not?

2   A                  I don't recall.

3   Q                  You dealt with Officer Hurley?

4   A                  Yes.

5   Q                  Okay.  And attached to an exhibit that

6   we marked as Hurley Exhibit 2 we have a handwritten

7   statement that's dated June 30 of 2004.  Do you recognize

8   that statement?

9   A                  Yes.

10  Q                  It's a two-page statement; is that

11  correct?

12  A                  Yes.

13  Q                  Okay.  Is that your handwriting?

14  A                  Yes.

15  Q                  In the block that says statement made

16  by name Tonya Traylor, is that your name?

17  A                  Yes.

18  Q                  Okay.  And is this a statement that you

19  completed during your visit to the Streetsboro, Ohio,

20  police department on June 30 of 2004?

21  A                  Yes.

22  Q                  In the statement you note four

23  unauthorized purchases; is that correct?

24  A                  Yes.

25  Q                  The first is for Splash Lagoon Resort

1    in Erie, Pennsylvania, in the amount of $198.79; is that

2    correct?

3    A          Yes.

4    Q          The second unauthorized purchase was

5    from Adelphia of Ohio for $40; is that also correct?

6    A          Yes.

7    Q          The third unauthorized purchase that

8    you had discovered was for Direct Marketing Cosmetic for

9    4.95?

10   A          Yes.

11   Q          And the fourth unauthorized purchase

12   was Direct Marketing -- what is that?  Lane?

13   A          Bry Lane.

14   Q          Bry Lane?

15   A          Bry Lane.  These names are what

16   literally showed up on my -- on the bank -- my bank

17   account.  It read exactly like that.

18   Q          Okay.  Now, under number -- under

19   purchase No. 3 and under purchase No. 4, there is a Lisa

20   Chapman that's noted there.  You don't know Lisa Chapman?

21   A          No.

22   Q          And you never authorized Lisa Chapman

23   to make those purchases; correct?

24   A          Correct.

25   Q          On the second page of your statement,

1   could you read the last paragraph just into the record?

2   Could you read it out loud?

3   A         I closed my debit card and will be

4   reissued a new card and number.  Plan to close my bank

5   account but have not done so yet.  I was told to file a

6   police report so that the bank could continue with their

7   attempt to restore my hard earned money back to me.

8   Q         Those are your words?

9   A         Yeah.

10   Q         Now, with regard to the phrase, I was

11   told to file a police report, who told you that?  Was

12   that the --

13   A         The bank.

14   Q         Okay.  And at the end of this on the

15   second page, at the end of the two-page report there's

16   also a signature, Tonya Traylor.  Is that your signature

17   also?

18   A         Yes.

19   Q         So you signed the first page and the

20   second page?

21   A         Yes.

22   Q         Okay.  And that also contains a date

23   and a time.  And does that -- is it fair to say that the

24   date and time reflect the date and the time that you

25   completed this handwritten statement, to the best of your

1              MR. BAX:  Object to the form of the

2  question.  Mischaracterizes her answer.

3  Q              Did the name Tanielle Shurney come up

4  during the course of the conversation?

5  A              I don't know.

6  Q              Okay.  Did you at that point in time

7  indicate you wanted to cancel the reservation?

8  A              Yes.  Yes.

9  Q              Okay.  Now, did you have a conversation

10 with Ms. Purchase as to how you were going to get your

11 money back?

12 A              Yes.

13 Q              And what was that conversation?

14 A              She said that she needed to contact

15 their accounting department or whoever handles that part

16 of it and she would follow up with me getting my money

17 back.

18 Q              And did she say she would be your

19 contact person for purposes of this problem, to call me

20 when you have a question?

21              MR. BAX:  Object to the form of the

22 question.

23 Q              You can answer if you understand the

24 question.

25 A              I don't remember.

1    Q                Okay.  What was the next conversation

2    that you had with Ms. Purchase after July 2?

3    A                I don't remember dates, times, because

4    I only -- I only remember actually what I wrote on this

5    paper at this point.  I can vaguely remember talking to

6    her, but obviously I was trying to get -- because it took

7    about a month before she actually -- it took a while for

8    Splash Lagoon to reimburse me the money.  So I know I

9    spoke to her a couple times, but that's all I know.

10   Q                Okay.  So the money was actually taken

11   out of your account on June 26 of 2004; is that correct?

12   A                I noticed it on June 30.

13   Q                Okay.  And it says -- looking at your

14   statement, the transaction date was June 26.

15   A                Okay.

16   Q                Is that correct?

17   A                Yes.

18                        MR. BAX:  If you know.

19   A                Yes.

20   Q                You might as well --

21   A                This is based on the bank records, not

22   me saying it, yes.

23   Q                That's fine.  On Page 2 of your report,

24   do you see that there?

25   A                Yes.

33

1    Q                Just has the three transaction dates?

2    A                Yes.

3    Q                June 27, July 1 and July 2?

4    A                Yes.

5    Q                Do you have any explanation as to why

6    the Splash Lagoon transaction date of June 26 isn't

7    included in Page 2?

8    A                This is from the bank.  I can

9    speculate, but I don't know.  It's just my opinion, but

10   this came from the bank and I believe --

11                   MR. BAX:  I'm going to object to

12   any answer that calls for her to speculate and move to

13   strike her response.

14   Q                Okay.  Go ahead.  You can answer.

15   A                I can still answer?

16   Q                Yes.

17   A                I believe by the time this letter was

18   sent to me on September 7, 2004, the issue with Splash

19   Lagoon was already resolved because they had given me

20   back my money and these other three weren't.

21   Q                All right.  Now, the Adelphia, which we

22   all know to be a cable company, did you learn the

23   person's name or account that was used to pay with your

24   debit card number?

25   A                No.  They wouldn't share any