**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TANIELLE SHURNEY,                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )        1: 05cv196
                                     )
SCOTT'S ECONO INN, INC.,             )
et al.,                              )
                                     )
              Defendants.            )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., DISTRICT J.

       This civil action is brought under 42 U.S.C. § 1983[1] and arises from Plaintiff
Tanielle Shurney's claim that she was subjected to a warrantless felony arrest and
subsequent incarceration without sufficient probable cause.  We have jurisdiction
pursuant to 28 U.S.C. § 1343.

       Presently pending before the Court are the Defendants' motions for summary
judgment.  For the reasons set forth below, these motions will be granted.

## I.  STANDARD OF REVIEW

       Summary judgment is appropriate if the pleadings, depositions, answers to
interrogatories and admissions on file, together with any affidavits, show that there is no
genuine issues as to any material fact and that the moving party is entitled to judgment

---

[1] Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State ... subjects, or causes to be subjected, any
> citizen of the United States ... to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding
> for redress.

42 U.S.C. § 1983.

as a matter of law. *Fed. R. Civ. P. 56(c)*. In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir.1990). The moving party has the initial burden of demonstrating that, given the evidence of record, no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Wilson v. Lemington Home for the Aged, No. 99-1893, 2000 WL 33712287 at *1 (W.D. Pa. April 12, 2000). Entry of judgment is mandated against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Wilson, *supra,* at *1. Viewing the evidence in this case most favorably to the Plaintiff, we recite the pertinent facts.

## II. BACKGROUND

The underlying dispute in this action arises from an incident involving unauthorized charges made to a debit/credit card belonging to Tonya Traylor, a 33-year old female who lives and works in the Cleveland, Ohio area. The charges in question were made to secure the purchase of passes to Splash Lagoon (a water park located in Erie, Pennsylvania) and a room at the Econolodge (a hotel which provides accommodations for patrons of Splash Lagoon).

The undisputed evidence of record establishes that, on June 25, 2004, a woman identifying herself as Tanielle Shurney telephoned the Splash Lagoon reservation center to reserve a hotel room and five passes to Splash Lagoon for two adults and three children for July 3, 2004. The caller was informed that she would need a credit

2

card to place the reservation.  The caller indicated that she did not have a credit card but would call back.  Later that same evening a female, who again identified herself as Tanielle Shurney, called the reservation center back and spoke with Kristen Mooney, a reservations clerk.  During the course of this conversation, the caller indicated that her cousin, "Tracey Smith," would put the charges on her credit card.  An individual identifying herself as Tracey Smith then got on the phone and provided a Master Card account number, which was accepted by the Splash Lagoon reservation system, immediately charging the card holder's account in the amount of $198.79.  The account number used to purchase the reservation did not belong to either Tanielle Shurney or Tracey Smith, but instead belonged to Tonya Traylor.

On June 30, 2004, Ms. Traylor discovered that her Master Card account with Key Bank was overdrawn and that several unauthorized charges had been placed on her account.  The first unauthorized charge was the June 25, 2004 charge to Splash Lagoon in the amount of $198.79.  Upon discovering this activity, Ms. Traylor immediately contacted Splash Lagoon and reported that she had neither made the reservation nor authorized the use of her debit account to secure the reservation.

Ms. Traylor also reported the activity to Officer Jon Hurley of the Streetsboro, Ohio Police Department, who undertook an investigation.  On July 2, Officer Hurley contacted Patty Purchase, manager of the Splash Lagoon reservation center.  Ms. Purchase faxed him reservation documents confirming that a reservation had been placed in the name of Tanielle Shurney for July 3, 2004 using the account number belonging to Ms. Traylor.  Officer Hurley indicated to Ms. Purchase that he would be in contact with the Pennsylvania State Police concerning the case and he requested that the Econolodge check-in-desk notify the state police when Ms. Shurney arrived to claim the reservation.  Officer Hurley then contacted the state police in Erie, informed them of the situation, and asked that a trooper be dispatched to the Econolodge when Ms. Shurney checked in.

On the night of July 2, 2004, a female, again identifying herself as Tanielle Shurney, telephoned the reservation center to confirm her reservation. Ms. Purchase spoke with the caller who confirmed her identity as "Tanielle Shurney" and provided her address and telephone number. The caller advised Ms. Purchase that the credit card used to make the reservations belonged to "Tracey Smith" and requested that no additional charges be made to the card for incidentals. Ms. Purchase confirmed the reservation and advised the caller that she could come to the hotel at noon the following day to claim her passes.

On July 3, 2004, at approximately 2:00 p.m., Plaintiff arrived at the Econolodge along with a party of two other adults and four children. Plaintiff went alone into the Econolodge and signed for the hotel room and passes that had been purchased with Ms. Traylor's debit card account number. Plaintiff advised the Guest Services Agent that she was not in possession of the Master Card that had been used to pay for the reservation. She presented photo identification and obtained the room key and Splash Lagoon passes. An Econolodge employee then contacted the state police and advised that Tanielle Shurney was on the premises.

Shortly thereafter, Pennsylvania State Police Trooper Sean Pierce came to the Econolodge accompanied by his police training coach, Trooper James R. Szymanski. Trooper Szymanski remained in the patrol car while Trooper Pierce interviewed the Guest Services Agent who had processed Plaintiff's reservation. The agent confirmed that Tanielle Shurney had arrived at the Econolodge to claim a reservation made in her own name using the Master Card account number that had been reported stolen by Ms. Traylor. The agent further advised Trooper Pierce that Shurney had signed for the room using that same account number but did not have the Master Card in her possession. Physical evidence included documents from the reservation center bearing Plaintiff's name and the account number of Ms. Traylor's Master Card, as well as copies of Plaintiff's photo driver's license and the receipt for the room which was signed by Plaintiff using the unauthorized Master Card account. Trooper Pierce presented this

4

evidence to Trooper Szymanski, who determined that there was probable cause to arrest Plaintiff on charges of Theft by Deception and Access Device Fraud.  Trooper Szymanski then approached Plaintiff in the parking lot of the Econolodge and placed her under arrest.

Plaintiff was transported to the state police barracks where she waived her Miranda rights and was questioned by Trooper Pierce.  During questioning, Plaintiff told Trooper Pierce that the reservations had been made by Tracey Smith, for whom Plaintiff provided an address, but no telephone number.[2]  This was the first time that Trooper Pierce had heard of the name Tracey Smith or her alleged involvement in the reservation.  Plaintiff further denied having called the Econolodge on July 2 to confirm her reservation.  Following his questioning of Plaintiff, Trooper Pierce (upon the prior directive from Trooper Szymanski) prepared a Criminal Complaint and Affidavit of Probable Cause setting forth the factual information in support of the arrest and charging Plaintiff with one count of theft by deception and one count of access device fraud.

Following her arrest, Plaintiff was preliminarily arraigned before District Justice Frank Abate, Jr..  At her preliminary arraignment, Plaintiff maintained that Tracey Smith had made the reservation and had provided the necessary credit card information.  District Justice Abate nevertheless set bail and committed Plaintiff to the Erie County Prison.  Plaintiff was later released on July 9, 2004 after paying a bail bondsman $1,000.00.

On August 13, 2004, a preliminary hearing was held before District Justice James Dwyer.  At that hearing, the charges were dismissed on the theory that the

---

[2] Although Splash Lagoon personnel had received information that "Tracey Smith" was Tanielle Shurney's cousin, Trooper Pierce testified that Plaintiff referred to "Tracey Smith" first as her sister, then as a friend whom she considered to be "like a sister."  Trooper Pierce subsequently tried to make contact with Tracey Smith but was unable to locate anyone by that name at the address supplied by Plaintiff.

Commonwealth could not establish Plaintiff's intent to defraud or actual involvement in the alleged crimes.

Plaintiff subsequently filed this action, naming as Defendants Scott's Econo Inn, Inc. (which we refer to as "Econolodge"), Scott's Splash Lagoon, Inc. (referred to simply as "Splash Lagoon"), Trooper Sean Pierce (individually and in his official capacity as a state trooper) and John Doe[3] (individually and in his capacity as the supervisor of Defendant Pierce). Plaintiff claims that these Defendants are responsible for her being subjected to a warrantless arrest and subsequent incarceration without adequate probable cause. Her complaint seeks, among other things, injunctive relief, compensatory damages and a punitive damages award stemming from this incident.

## III.  DISCUSSION

To establish a claim under § 1983, a plaintiff must show that a violation of a right secured by the federal constitution or laws occurred and that the alleged violation was committed by a person acting under color of state law.  Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir.1995); DiNicola v. DiPaolo, 25 F. Supp. 2d 630, 637 (W.D. Pa. 1998).  Here, Plaintiff appears to be asserting a claim for false arrest, false imprisonment and/or malicious prosecution, in violation of her Fourth Amendment right against unlawful seizure.[4]

A warrantless arrest by a police officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing cases). "Whether probable cause exists depends upon the reasonable conclusion to be drawn

---

[3] We presume the John Doe defendant refers to Trooper Szymanski; however, Trooper Szymanski has not been formally substituted as a defendant herein.

[4] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.

from the facts known to the arresting officer at the time of the arrest." Id. (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  The standard is therefore an objective one.  See id. at 153 ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.").  Probable cause has been defined as "facts and circumstances . . . that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Camiolo v. State Farm Fire and Cas. Co., 334 F.3d 345, 363 (3d Cir. 2003) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (ellipsis in the original).

The record here is undisputed that, at the time of Plaintiff's arrest, Trooper Pierce was aware that fraudulent credit card charges had allegedly been made to secure a room at the Econolodge and passes to Splash Lagoon.  Trooper Pierce knew that, based on these allegations, a criminal investigation had been commenced by the Streetsboro, Ohio Police Department.  He was aware that the name "Tanielle Shurney" (and, to his knowledge, *only* that name) had been mentioned in connection with the allegedly fraudulent reservation.  To his knowledge, Tanielle Shurney was the person who would receive services paid for through the unauthorized charges.  He was further aware that Tanielle Shurney had appeared at the Econolodge at the scheduled time to claim the reservation made in her name, that she signed for the room and passes, and that the room and passes were paid for through unauthorized charges on Ms. Traylor's debit card account.  Trooper Pierce received access to copies of reservation documents, Plaintiff's signed receipt, and Plaintiff's driver's license.  He shared all of this information with Trooper Szymanski, who concluded that there was probable cause to arrest Plaintiff for theft by deception[5] and access device fraud.[6]  Moreover, Plaintiff

---

[5] The crime of theft by deception is defined as follows:

(a) Offense defined.--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

7

admits that, at the time of her arrest, she *did not* assert to Trooper Pierce that the reservation had been made by Tracey Smith, nor did she claim to be unaware that a third party's debit card number had been used to make unauthorized reservation charges. In the Court's view, these facts establish, as a matter of law, that the Troopers possessed probable cause to believe Plaintiff had committed the crimes for which she was arrested.

Apparently, at the time of her preliminary arraignment before District Justice Abate, Plaintiff *did* assert that the debit card account number had been supplied by her cousin, Tracey Smith. Nevertheless, DJ Abate found that the Commonwealth had established probable cause for the arrest,[7] set bond, and committed Plaintiff to custody at the Erie County Jail. Although the deference normally accorded to a magistrate's probable cause finding does not apply in a § 1983 action, see Merkle v. Upper Dublin

---

> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind ...
>
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or
>
> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

18 Pa. C.S.A. § 3922.

[6] The crime of access device fraud is defined as: "[use of] an access device to obtain or in an attempt to obtain property or services with knowledge that ... the access device was issued to another person who has not authorized its use. 18 Pa. C.S.A. § 4106 (a)(1)(ii).

[7] At the preliminary arraignment, a neutral magistrate makes an independent determination as to probable cause. See Stewart v. Abraham, 275 F.3d 220, 228 (3d Cir. 2001) ("It is the function of the reviewing neutral magistrate to determine 'whether the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed.'") (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964)). The defendant may not be detained unless the magistrate finds that probable cause existed. Pa. R. Crim. P. 540(D).

8

School Dist., 211 F.3d 782, 789 (3d Cir. 2000); Dintino v. Echols, 243 F. Supp. 2d 255, 262 n.9 (E.D. Pa. 2003), aff'd, 91 Fed. Appx. 783, 2004 WL 474134 (3d Cir. Mar. 11, 2004), the fact that a neutral magistrate made such a finding – even factoring in Plaintiff's assertion that someone else besides her had made the reservation – supports our independent conclusion that Trooper Pierce possessed probable cause to arrest Plaintiff. The Third Circuit Court of Appeals has stated that Pennsylvania's laws requiring the existence of probable cause for arrests and a neutral magistrate's review of that probable cause determination within 48 hours satisfies all that the Fourth Amendment requires, see Stewart v. Abraham, 275 F.3d 220, 228-29 (3d Cir. 2001), and we find that these mandates were fully complied with here beyond any genuine factual dispute. See also Heck v. Humphrey, 512 U.S. 477, 484 (1994) (where confinement has been imposed "pursuant to a legal process," damages may not be sought under a claim of false arrest).

Plaintiff places great reliance on the fact that the charges against here were ultimately dismissed at the time of her August 13, 2004 preliminary hearing. However, the fact that the charges were dismissed at the preliminary hearing stage does not thereby negate the existence of probable cause to support Plaintiff's initial arrest and detention. Fundamentally, courts have interpreted Pennsylvania law as requiring differing levels of proof to support a finding of probable cause versus a *prima facie* case of guilt at the preliminary hearing stage. As the Third Circuit has explained:

> The different terms chosen to describe the Commonwealth's burden at the time of arrest and preliminary arraignment and its burden at the time of the preliminary hearings, suggest to us that prima facie case standard was intended to require different and greater assurance of guilt. "Probable cause," of course, speaks in terms of a probability while "prima facie case" has been defined by the Pennsylvania Supreme Court as evidence" such that if presented at the trial in court, and accepted as true, the judge would be warranted in letting the trial go to the jury." *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991, 996 (Pa.1983) (emphasis in original) (citations omitted). Thus, while the Commonwealth need not convince the preliminary hearing judge of guilt beyond a reasonable doubt, it must nonetheless present admissible evidence at the preliminary hearing that would warrant a reasonable jury in finding each of the elements of the offense by that standard. *Id*. It is thus not surprising to find Pennsylvania cases recognizing that the standard of probable

9

cause and the prima facie case standard are conceptually distinct. *See Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350, 355 (Pa. 1978) (plurality opinion) (finding that probable cause had existed for the institution of criminal proceedings, though a prima facie case had not been established); *Commonwealth v. Days*, 718 A.2d 797, 800 (Pa. Super. 1998) (stating in the context of affirming that a magistrate properly determined that probable cause existed to issue a search warrant that "[p]robable cause is based on a finding of probability, not a prima facie showing of criminal activity"); *Commonwealth v. Scott*, 279 Pa. Super. 8, 420 A.2d 717, 720 (Pa. Super. 1980) ("It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause.").

Stewart v. Abraham, 275 F.3d at 229-230.  See also Egolf v. Witmer, 421 F. Supp. 2d 858, 867 (E.D. Pa. 2006) (a *prima facie* case requires a higher standard of proof than that required to establish probable cause) (citing Stewart, *supra*).

Plaintiff also objects that Trooper Pierce should have conducted a more thorough investigation before making the decision to arrest her and insists that the existence of exculpatory evidence precludes a finding of probable cause.  Plaintiff maintains that at least two other individuals, Tracey Smith and Lisa Chapman, were implicated in the posting of unauthorized charges and should have been investigated. Plaintiff has suggested in the alternative that the unauthorized use of Ms. Traylor's account number was merely the result of an innocent mistake.

We find Plaintiff's arguments unconvincing.  At the time of Plaintiff's arrest, only the name Tanielle Shurney had been made known to Trooper Pierce in connection with the investigation of unauthorized charges at Splash Lagoon.  Trooper Pierce would have had no reason to doubt the reports from other law enforcement personnel and/or Econolodge representatives that established:  "Tanielle Shurney" had called the hotel to make, and later, to confirm, the reservation placed in her own name; the reservation was paid for with the debit card account number belonging to Ms. Traylor; the charges at issue were not authorized and were the subject of a criminal investigation by Ohio police; Plaintiff had shown up and personally signed for the room and water park passes, again utilizing the account number owned by Ms. Traylor; and Plaintiff did not

10

possess the card used to make the purchases.  This information alone was objectively sufficient to warrant a reasonable belief that Plaintiff had committed theft by deception and access device fraud especially since, at the point of her arrest, Plaintiff did not deny knowledge of the unauthorized charges or mention the alleged involvement of "Tracey Smith."  See Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (the relevant time for determining whether probable cause existed is at the time the arrest was made).  To the extent Plaintiff did subsequently deny involvement in the unauthorized charges, Trooper Pierce was not required to take her denial at face value.  See Garcia v. County of Bucks, Pennsylvania, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001) ("An arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken identity.").

Moreover, to the extent that Trooper Pierce was made aware that "Tracey Smith" or "Lisa Chapman" had surfaced as possible suspects in connection with unauthorized charges to Ms. Traylor's account, his failure to investigate these individuals does not negate the existence of probable cause supporting Plaintiff's arrest.  Trooper Pierce was "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed.")  Merkle, 211 F.3d at 790 n. 8 (officer's failure to interview additional witnesses prior to arresting teacher for theft offense did not undermine finding of probable cause).  See also Walker v. Spiller, 54 F. Supp. 2d 421, 426 (E.D. Pa. 1999)("A police officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of a showing that the [officer's] initial probable cause determination was itself unreasonable.'") (alteration in the original) (citations omitted).

In addition, the possible complicity of other individuals – including Plaintiff's "cousin" Smith – in the unauthorized charges to Ms. Traylor's account does not necessarily tend to exculpate Plaintiff.  In fact, there is nothing in the record to suggest that further investigation into these leads would have necessarily produced information favorable to Plaintiff.  Despite the fact that Plaintiff allegedly has a close relationship

11

with Smith and had apparently intended to accompany Smith's child to Splash Lagoon, Plaintiff could provide only an address (and no phone number) as a means of contact with Smith.  Moreover, when Trooper Pierce subsequently attempted to make contact with Tracey Smith, he was unable to locate anyone by that name at the address Plaintiff supplied.  Interestingly, there is no indication in the record that "Tracey Smith" has ever made an appearance or given a statement on Plaintiff's behalf, either in Plaintiff's criminal proceedings or in this case.[8]

As for Plaintiff's suggestion that the unauthorized charge to the Econolodge/ Splash Lagoon was somehow the result of an inadvertent mistake, there is nothing in the record to suggest this as a realistic possibility.  Plaintiff has produced no evidence to suggest, for example, that Tracey Smith was in possession of a credit/debit card with an account number substantially similar to the one belonging to Ms. Traylor.  In fact, Ms. Purchase testified that, when reservations are made for Splash Lagoon, the clerk double checks the account number with the customer; if a number is entered incorrectly the system flags it as inaccurate.  Accordingly, Plaintiff's proffer falls short of establishing a genuine issue of material fact with respect to the issue of probable cause.

In sum, the evidence establishes, as a matter of law, that the objective facts available to Trooper Pierce at the time he and Trooper Szymanski arrested Plaintiff were sufficient to justify a reasonable belief that she had committed theft and access device fraud.  The existence of probable cause is fatal to the Plaintiff's Fourth Amendment claims against the Troopers.  See DiNicola, 25 F. Supp. 2d at 637 (the lack of probable cause is an essential element for plaintiff's Fourth Amendment claims premised on alleged false arrest, false imprisonment, and malicious prosecution).

---

[8] It is also worth noting that, on the date of her arrest, Plaintiff was found to be in possession of two photo IDs, only one of which was her own.

12

We note that Plaintiff has also lodged Fourth Amendment claims against the Econolodge and Splash Lagoon under the theory that those Defendants requested and/or instigated the Plaintiff's arrest or at least ratified it by aiding in the investigation, arrest and prosecution.  Courts have recognized that a third party may be liable for malicious prosecution in initiating or pressing unfounded criminal charges if they are in possession of information not provided to the police that would have negated probable cause for the plaintiff's arrest.  See Merkle, 211 F.3d at 794-95 (notwithstanding the fact that police officers acted with probable cause in arresting teacher for alleged theft, school district could be liable for initiating criminal proceedings and pressing what proved to be unfounded charges where evidence was sufficient to support finding that school district acted on motivation to retaliate against teacher for protected speech).

Here, however, the record is uncontroverted that neither Econolodge nor Splash Lagoon initiated or pressed the criminal charges against Plaintiff.  At most, these Defendants cooperated in the criminal investigation, but there is no evidence that they manipulated the arrest by, e.g., withholding materially exculpatory information.  Plaintiff complains that Ms. Purchase failed to disclose to Trooper Pierce that Tracey Smith had purportedly supplied the debit card account to secure the Plaintiff's reservation.  As we have already discussed, however, this information – even if initially known by Trooper Pierce – would not have vitiated the probable cause that supported Plaintiff's arrest. Trooper Pierce had available to him credible information that Tanielle Shurney had called the Econolodge twice to book and confirm her reservation, that the debit charge had been procured on behalf of Tanielle Shurney – and apparently at her request – for the purpose of securing her reservation, and that Tanielle Shurney showed up to claim this reservation and signed for it, utilizing the unauthorized charge as her means of payment.  A reasonably prudent officer in Trooper Pierce's position could certainly conclude that Tanielle Shurney committed the crimes of theft and access device fraud.

13

## IV.  CONCLUSION

Based upon the foregoing discussion, the Defendants' motions for summary judgment will be granted.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TANIELLE SHURNEY,          )
                                   )
              Plaintiff,     )
                                   )     1: 05cv196
      v.                      )
                                   )
SCOTT'S ECONO INN, INC.,  )
et al.,                       )
                                   )
             Defendants.   )

## O R D E R

AND NOW, to wit, this 23rd day of June, 2006, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED THAT the Joint Motion [Doc. # 34] for Summary Judgment filed on behalf of Defendants Scott's Econo Inn, Inc. and Scott's Splash Lagoon, Inc. and the Motion [Doc. # 38] for Summary Judgment filed on behalf of Defendant Sean Pierce are GRANTED.

JUDGMENT is hereby entered in favor of all DEFENDANTS and against Plaintiff, Tanielle Shurney.

                                    s/     Sean J. McLaughlin
                                           SEAN J. McLAUGHLIN
                                           United States District Judge

cm:   All counsel of record.